601 A.2d 1284

**COMMONWEALTH of Pennsylvania**

v.

**Angelo GREKIS, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 11, 1991.

Decided Jan. 14, 1992.

514

516

Raymond Radakovich, Pittsburgh, for appellant.

James R. Gilmore, Asst. Dist. Atty., Pittsburgh, for Com., appellee.

Before CAVANAUGH, BECK and KELLY, JJ.

BECK, Judge:

This is an appeal filed from the judgment of sentence imposed upon Angelo Grekis after a jury convicted him of one count of promoting prostitution [1], one count of corrupting a minor [2], one count of solicitation to commit prostitution [3] and three counts of solicitation to commit involuntary deviate sexual intercourse (IDSI) [4]. The instant case arose following the arrest of a young girl for soliciting for prostitution. During the course of the post-arrest interview, the girl disclosed that her primary base of operations was Krazi's Bar, an establishment known by the police to be owned and operated by Angelo Grekis. Prompted, in part, by the extreme youth of the girl, who was fourteen (14) at the time of her arrest, the police investigated further.

Appellant Grekis seeks relief on several grounds. He argues that the trial court erred in permitting the Commonwealth to amend the information to add the three counts of solicitation to commit IDSI. Appellant also challenges the sufficiency of the evidence on all the charges of which he was convicted. In addition, in a supplemental brief filed by leave of this court, appellant claims that trial counsel was ineffective for failing to object to the testimony by the victim regarding an uncharged act of oral sex for which she was paid by appellant. Finally, appellant raises numerous complaints regarding the sentences imposed.

The evidence upon which appellant was convicted was as follows. Krazi's Bar and its adjoining establishment, the Quick Stop Restaurant, are located in the business district of downtown Pittsburgh. Detectives from the organized crime, narcotics and intelligence unit testified at trial regarding their familiarity with Krazi's Bar, its clientele and its ownership. On numerous occasions appellant identified

1. 18 Pa.C.S. § 5902(b)(7) (Purdon 1983).
2. 18 Pa.C.S. § 6301 (Purdon 1983).
3. 18 Pa.C.S. § 902 (Purdon 1983).
4. 18 Pa.C.S. § 902 (Purdon 1983).

himself to the police as the person in charge at Krazi's Bar. Due to what the detectives described as a "high concentration of daylight prostitution" in the area, the police maintained a steady surveillance around and in the bar. One officer who was stationed in the bar several hours a week observed the level of managerial and business involvement appellant exhibited every day. The evidence indisputedly established that appellant was in charge.

Every time the police chased the prostitutes off the street, "invariably" they would go into appellant's bar. Therefore, Detective Lou Garda, a twenty year police veteran, investigated further to discover that Krazi's Bar was sanctuary to numerous "prostitutes and pimps." The detective pointed these clients out to appellant so that appellant could not claim, as previously he had, that he did not know who was in his bar. As a result of recurring incidents of this nature, the police warned appellant on many occasions that he was in danger of losing his liquor license since permitting the use of his establishment for prostitution was in violation of the law. These warnings were repeated but were disregarded by appellant. The detectives described appellant's attitude as indifferent to the type of activity flagrantly occurring on his premises.

S.H., a young girl who frequented Krazi's Bar in order to solicit for prostitution, was arrested on January 23, 1989, when she tried to solicit a police officer. During the course of her interview with police following arrest, she revealed her connection with Krazi's Bar. At appellant's trial, S.H. testified that between August 1988 and January 1989 she was in the bar almost every day, six days a week. At the time, she was fourteen years old. She frankly admitted that she was in Krazi's Bar for purposes of prostitution. She testified that she saw appellant there almost everyday. According to S.H., the fact that she was a prostitute was known to everyone and that, in fact, "the only people that would come down there were prostitutes, pimps, drug dealers, male prostitutes, anything of that sort." Appellant never attempted to stop S.H. or discourage her nor did he

ask her to leave. Although an obvious young girl at the time of these events, S.H. had no trouble purchasing drinks at the bar, which she could recall doing at least three times. Moreover, she stated that usually she would take her clients to a nearby motel room but that occasionally she would take them into the ladies' room in the bar. S.H.'s testimony makes it clear that these activities were in no way concealed but, on the contrary, were very conspicuous.

With respect to her direct interactions with appellant, S.H. described them as follows. On December 13, 1988,[5] after she had consumed a drink served to her at the bar, appellant approached her and offered her "$35 for head." S.H. interpreted this as a request for oral sex in exchange for money. S.H. agreed and she and appellant went upstairs to the office where the act was performed. Later the same day, appellant again approached S.H. and said "I want your ass." S.H. responded that "you're going to have to pay for that because I'm not willing to give it up." Appellant then said "I'll give you $50." When S.H. declined, the subject was dropped. S.H. explained at trial that appellant's terminology meant that "he wanted to have anal intercourse." A few weeks later, appellant made the same request and again S.H. responded negatively. Sometime after that, also on an unspecified date, the request was repeated and met with the same negative response. S.H. stopped going to Krazi's Bar after her arrest for soliciting and subsequent confinement to a youth development center.

Appellant's defense at trial was three-pronged. First, he presented testimony through his wife and neighbor which sought to establish that on December 13, 1988, the day the first act of solicitation for IDSI was said to have occurred, he was out-of-town. Second, he sought to undermine the credibility of S.H. by characterizing her as untrustworthy and a liar. Finally, he introduced the testimony of a mail-

5. S.H. testified that she particularly remembered the date because a certain pimp had approached her to get her to work for him and she remembered that she was wearing clothes that belonged to another prostitute.

man who frequented Krazi's Bar and who testified that he never saw anyone soliciting for prostitution there.

█ Appellant originally was charged with five offenses: promoting prostitution, corrupting the morals of a minor, and three counts of criminal solicitation to commit prostitution. Specifically, the latter three counts alleged that appellant had offered fifty dollars to S.H. to engage in anal intercourse. A preliminary hearing was held on February 10, 1989 and appellant was held for court on all charges. Thereafter, on July 21, 1989, months before trial was scheduled, the Commonwealth petitioned to amend the information in order to charge three counts of criminal solicitation to commit IDSI. On August 28, 1989, a hearing was held on the Commonwealth's petition to amend. At the hearing, the Commonwealth maintained that the predicate facts for the three additional counts were identical to those facts underlying the solicitation for prostitution counts, i.e., that the defendant had offered S.H. money to engage in an act of anal intercourse. The Commonwealth noted further that S.H.'s age was developed explicitly at the preliminary hearing. When queried by the court about how the amendment would prejudice his client, under these circumstances, defense counsel argued that he was prejudiced by a lack of a preliminary hearing on the amended counts. The trial court found that no prejudice had been shown and permitted the amendment. Trial was held two months later.

On appeal, appellant again asserts that the trial court erred in permitting the amendment discussed above. He contends, but does not demonstrate, that the amendment prejudiced his ability to defend himself at trial. We conclude that, under the circumstances of this case, the trial court properly permitted the amendment of the information. The amendment here worked no prejudice to appellant and in no way diminished his ability to prepare his defense for trial. As such, we find that the amendment did not constitute error.

The courts of this Commonwealth have had numerous opportunities to review challenges to amended informations

and have developed a standard by which such claims shall be evaluated. The starting point is Pa.R.Crim.P. 229, which provides:

The court may allow an information to be amended when there is a defect in form, the description of any person or any property, or the date charged, provided the information as amended does not charge an additional or different offense. Upon amendment the court may grant such postponement of trial or other relief as is necessary in the interests of justice.

Appellant argues that by adding the charges of criminal solicitation to commit IDSI the court violated the letter of Rule 229 which disallows amendments which charge an "additional or different offense." To the extent that a substantive change was worked by amending the information to charge an offense carrying a greater potential penalty and whose elements are theoretically different [6],

6. The original information charged appellant with criminal solicitation to commit prostitution. The underlying offense, prostitution, is a misdemeanor of the third degree. 18 Pa.C.S. § 5902(a). The amended information charged appellant with criminal solicitation to commit involuntary deviate sexual intercourse. The underlying offense, IDSI, is a first degree felony. 18 Pa.C.S. § 3123. The grading of criminal solicitation offenses is governed by 18 Pa.C.S. § 905, which provides:

(a) **Grading.**—Except as otherwise provided in this section, attempt, solicitation and conspiracy are crimes of the same grade and degree as the most serious offense which is attempted or solicited or is the object of the conspiracy. An attempt, solicitation or conspiracy to commit murder or a felony of the first degree is a felony of the second degree.

Therefore, the proposed change clearly changed the grade of the offense charged. Under the circumstances of this case, this factor is not dispositive. *See Commonwealth v. Fuller,* 396 Pa.Super. 605, 616, 579 A.2d 879, 885 (1990) (permissible under the particular circumstances of that case for court to allow amendment which added a charge of aggravated assault, a first degree felony, where the original information charged criminal solicitation to commit murder, a second degree felony).

In addition, the elements of the underlying offenses, prostitution and IDSI, are indisputably different. Prostitution is engaging in sexual activity as a business. It does not require particularized deviate sexual activity, nor, of course, does it contain the added component of involuntariness on the part of the victim. Likewise, IDSI does not contain the "business" ingredient. However, as is explained more fully *infra,* in the context of this case, the same

a literal reading of Rule 229 would appear to argue in appellant's favor. Rule 229 is a starting point only, however, because our courts apply the rule with an eye toward its underlying purposes and with a commitment to do justice rather than be bound by a literal or narrow reading of procedural rules. Therefore, this court had stressed that "we look more to substantial justice than to technicalities" when reviewing the validity of an amended information. *Commonwealth v. Fuller*, 396 Pa.Super. 605, 616, 579 A.2d 879, 885 (1990). Furthermore, we have noted that: "The case law sets forth a broader test for propriety of amendments than the plain language of the rule suggests...." *Commonwealth v. Mosley*, 401 Pa.Super. 537, 542, 585 A.2d 1057, 1060 (1991) (en banc). The broad scope of the test is defined by the fundamental purposes of Rule 229, which are; 1) to place a defendant on notice of the criminal conduct of which he is accused and, 2) to avoid prejudicing his defense by last minute additions or substantive changes of which he is uninformed. *See Commonwealth v. Mosley, supra*, 401 Pa.Super. at 541, 585 A.2d at 1059, *citing Commonwealth v. Stanley*, 265 Pa.Super. 194, 212, 401 A.2d 1166, 1175 (1979), *aff'd*, 498 Pa. 326, 446 A.2d 583 (1982) ("The safeguards of the rule are intended to give the defendant adequate preparation time for trial without risk of last-minute additions to the charges which materially alter his defense.")

■ In light of these basic principles, the often-articulated guidelines for assessing the propriety of amendments to an information are the following:

[T]he courts of this Commonwealth employ the test of whether the crimes specified in the original indictment or information involve the same basic elements and evolved out of the same factual situation as the crimes specified in the amended indictment or information. If so, then the

conduct by appellant and the same explicit proof underlies each offense here. The law does not disallow all proposed changes which involve offenses with different elements, but only those which constitute such material differences that the defendant is prejudiced thereby.

defendant is deemed to have been placed on notice regarding his alleged criminal conduct. If, however, the amended provision alleges a different set of events, or the elements or defenses to the amended crime are materially different from the elements or defenses to the crime originally charged, such that the defendant would be prejudiced by the change, then the amendment is not permitted.

*Commonwealth v. Stanley*, 265 Pa.Super. at 212–13, 401 A.2d at 1175.

Applying these guidelines to the facts of the instant case it is clear that the amendments sought by the Commonwealth were properly permitted by the court. Appellant unmistakably was placed on notice of his criminal conduct and, in fact, was alerted to the charges from numerous sources both in the original information and at the preliminary hearing. The original information charged appellant with three counts of criminal solicitation in violation of 18 Pa.C.S. § 902(a), in that appellant "offered the victim [S.H.] $50.00 to engage in anal intercourse with him". The conduct was properly characterized as a request to engage in conduct which would constitute the crime of prostitution if committed. The three separate counts were predicated on the same three incidents described above in which appellant requested that S.H. engage in an act of anal intercourse for money. Given S.H.'s age, however, the same conduct underlying the original charges would, if proved, also support charges of criminal solicitation to commit IDSI.

Moreover, the original criminal complaint charged appellant with corrupting the morals of a minor "by the act of offering the minor $50.00 to engage in I.D.S.I. with him." Thus, not only did the criminal solicitation counts apprise appellant of the basic factual elements of his criminal conduct, the corrupting minors count of the same information alerted him to the central feature here, that is that the conduct constituted an invitation to commit IDSI.

Furthermore, with respect to the notice component of the inquiry, it is also evident that appellant was made fully

aware of S.H.'s age. First, as noted above, the count charging appellant with corrupting the morals of a minor alleged that he did so by asking her to engage in "I.D.S.I." In the context of this case, the only conclusion that appellant reasonably could have reached was that S.H. was "less than 16 years of age" since that was the only aspect of the IDSI statute arguably applicable here.[7] In addition, on February 10, 1989, a preliminary hearing was held on the original charges, at which point S.H. testified as to her date of birth and age at the time of these offenses. Her testimony at the time portrayed the identical factual situation which formed the basis of the amended information.[8] Based on the foregoing, appellant's assertions that "the original information did not mention the fact that the prostitute, the alleged victim, was less than 16 years of age and that the alleged actions of the Appellant constituted I.D.S.I." and that therefore, "[he] could not fully apprise himself of the charges against him" are utterly unfounded. The Commonwealth's intended proof against appellant on all the charges, including the ones added to the amended information, was made known to appellant long before the amendment was sought and never varied all the way through trial.

Appellant argues that the recent Supreme Court case of *Commonwealth v. DeSumma*, 522 Pa. 36, 559 A.2d 521 (1989) dictates that we find the instant amendment imper-

7. 18 Pa.C.S. § 3123 (Purdon 1983) provides: Involuntary deviate sexual intercourse

  A person commits a felony of the first degree when he engages in deviate sexual intercourse with another person:
  (1) by forcible compulsion;
  (2) by threat of forcible compulsion that would prevent resistance by a person of reasonable resolution;
  (3) who is unconscious;
  (4) who is so mentally deranged or deficient that such person is incapable of consent; or
  (5) who is less than 16 years of age.

8. *See Commonwealth v. Wax*, 391 Pa.Super. 314, 571 A.2d 386 (1990) (appellant made aware of the Commonwealth's proof not only through the original information but also through a bill of particulars; therefore, appellant could not claim prejudice or surprise).

missible. In *DeSumma*, the defendant originally had been charged with displaying a handgun and menacing the driver of another automobile with whom he had argued when the other driver purportedly cut him off in traffic. The other car contained four passengers in addition to the driver/victim, but DeSumma was not charged with any criminal conduct with respect to them. At DeSumma's preliminary hearing, the driver/victim testified, as did the police officer and DeSumma was held for trial. Before trial, however, the complaining witness disappeared and at trial the Commonwealth summoned one of the passengers to testify instead. Due to the disappearance of the complaining witness, the Commonwealth requested and the trial court permitted an amendment to the information adding the names of all four passengers to the counts charging DeSumma with simple assault and reckless endangerment. DeSumma was acquitted of simple assault and convicted of reckless endangerment and he appealed. The Superior Court affirmed the conviction, with Judge Wieand dissenting. The Supreme Court, relying heavily on Judge Wieand's dissent, reversed. It found that the amendment was impermissible under Rule 229 because it charged "an additional and different offense" and that DeSumma was prejudiced by the eleventh-hour amendment. The court found that obvious prejudice flowed from the fact the DeSumma arrived at trial only to learn that he now had to defend himself against a charge of assaulting wholly different people with whom he had exchanged no words and with whom he previously had had no quarrel. The amendment was permitted suddenly and without warning and was necessitated by a last-minute and unanticipated variance in the proof the Commonwealth was prepared to present at trial. In our view, *DeSumma* is wholly inapposite.

Leaving aside for the moment the important question of timing and when the respective amendments were sought, the amendments at issue here did not, unlike in *DeSumma*, accuse appellant of conduct which had not previously been alleged. The Commonwealth did not intend to nor did it

vary its proof in any way from what reasonably could be anticipated from the original information. Whereas in *De-Summa*, as Judge Wieand emphasized [9], there was no reason for DeSumma to believe, until the moment of trial, that he had committed an assault on the passengers in the other car, appellant here had every reason to believe that the Commonwealth would seek to prove that he had attempted to engage S.H., a minor, in an act of anal intercourse. In fact, contrary to what occurred in *DeSumma*, the evidence the Commonwealth planned to offer at trial on the amended information was the same evidence offered on the original information at the preliminary hearing.

Significantly, the amendment which was permitted in *DeSumma* was undertaken at the last minute when, on the threshold of trial, the Commonwealth's original complaining witness failed to appear. Thus, the salient purpose to be served by Rule 229, i.e., that of adequate notice, was totally vitiated. In contrast, appellant here was informed of the proposed amendments literally months before trial. Two months passed between the time the trial court permitted the amendments and the time of trial. Under these circumstances, it is inconceivable that appellant can claim "surprise" with any credibility. *See Commonwealth v. Tillia*, 359 Pa.Super. 302, 308, 518 A.2d 1246, 1249 (1986) (where appellant had been given two months notice of the specific amended charges prior to trial and had ample time for trial preparation, the purpose of Rule 229 was satisfied).

Appellant mistakenly suggests that *DeSumma* altered the well-established inquiry into the validity of proposed amendments to an information. He argues that "prejudice does not enter into the picture" if it can be shown that technically the information as amended charges an additional or different offense. In our view, however, the key to determining whether a proposed amendment is permissible is unchanged by *DeSumma*. We seek, as always, to discover whether a defendant was put on notice of his criminal

9. *Commonwealth v. DeSumma*, 367 Pa.Super. 634, 641, 533 A.2d 453, 457 (1987) (Wieand, J., dissenting).

conduct and whether he was prejudiced by the amendment. Two cases decided by this court after *DeSumma* reiterate and apply this standard. In *Commonwealth v. Fuller*, 396 Pa.Super. 605, 579 A.2d 879 (1990), *allocatur denied*, 527 Pa. 585, 588 A.2d 508 (1991), appellant was charged in the original information with attempt to commit criminal homicide, conspiracy to commit criminal homicide and solicitation to commit criminal homicide. Prior to trial, the Commonwealth was permitted to amend the information to charge aggravated assault. This court affirmed, finding that, while technically charging a "different" offense, the amendment was permissible. In *Fuller* we found that the "charge of aggravated assault and criminal attempt murder arose out of the same set of facts" and that "under the particular facts of this case, the crimes charged involved the same basic elements." *Commonwealth v. Fuller*, 396 Pa.Super. at 616, 579 A.2d at 885. Therefore, because the defendant in *Fuller* was placed on notice of his criminal conduct and was not prejudiced by the amendment, this court held that it was permissible even though it involved a "substantive" change. *Id.*

Likewise, the *en banc* case of *Commonwealth v. Mosley*, 401 Pa.Super. 537, 585 A.2d 1057 (1991), clarified the applicability of *DeSumma*. In *Mosley*, the defendant was charged with various offenses which arose out of a gang battle which deteriorated into a shoot-out. A by-stander was killed and Mosley and his co-defendants were charged with her death. Several weeks prior to trial, the Commonwealth sought to amend the information to name as additional victims the opposing gang members who were the intended targets during the shoot-out. A hearing was held and the amendment was permitted. On appeal, this court affirmed, finding that *DeSumma* was distinguishable and did not control. The *Mosley* court noted the following relevant considerations: the identical facts formed the basis for the original charges and the amended charges; these facts did not change and were known from the time the charges were brought; the entire factual scenario was

developed during the preliminary hearing; the same facts were "material and necessary component[s]" of both the original and amended informations; the description of the charges did not change due to the amendment; no change in defense strategy was necessitated by the change; and the timing of the Commonwealth request in *Mosley* allowed for ample notice and preparation. In concluding that the amendments were proper, *Mosley* reiterated that "the correct focus, in applying Rule 229 to attempted amendments of criminal informations, must remain whether the amendment works an irreparable prejudice by forcing the accused to prepare or present a defense without adequate notice or sufficient time." *Mosley*, 401 Pa.Super. at 551, 585 A.2d at 1064. The central injustice in *DeSumma* was that the amendment altered the fundamental nature of the charges and confronted the defendant with an altogether new Commonwealth case. The same claim could not be made in *Mosley* and cannot be made here.

Finally, with regard to prejudice we note that appellant has not asserted any way in which the amended information prejudiced his defense. Appellant's alibi defense and tactic of undermining S.H.'s credibility was equally applicable to the original charges and the amended ones. No aspect of his defense concerned either S.H.'s age or the specific sexual act suggested by appellant, the two distinguishing characteristics of solicitation to commit IDSI in this case. Moreover, as discussed above, appellant had more than adequate notice of these aspects of the Commonwealth's case from the moment the criminal complaint was filed. The challenged amendment worked absolutely no harm to appellant nor was he deprived of fair notice of all the charges against him.[10]

10. Appellant's argument regarding the necessity to hold an additional preliminary hearing is wholly without merit. The purpose of a preliminary hearing is to establish that there is probable cause to hold a defendant for trial and to protect an accused against unlawful detention. *Commonwealth v. Beatty*, 281 Pa.Super. 85, 421 A.2d 1159 (1980). Appellant had a full preliminary hearing on the original information and, as has been exhaustively discussed above, the same events and factual predicate constitute the amended charges. No

■ Appellant's next several arguments concern challenges to the sufficiency of the evidence for his convictions of promoting prostitution, corrupting the morals of a minor and criminal solicitation to commit prostitution and IDSI. These claims have not been properly preserved for appellate review. They were raised, if at all, in boilerplate fashion in appellant's post-verdict motions. Nowhere did appellant indicate in what manner the evidence was insufficient to convict him, nor did he specify which convictions were allegedly deficient. In his briefs in support of the post-verdict motions, appellant did not mention any sufficiency claims. As a result, the trial court did not address the sufficiency argument in its opinion denying post-verdict motions. It is well established that given the foregoing, appellant's sufficiency claims are waived. *See, e.g., Commonwealth v. Hawthorne,* 364 Pa.Super. 125, 527 A.2d 559, *appeal denied,* 517 Pa. 592, 535 A.2d 81 (1987); *Commonwealth v. Holmes,* 315 Pa.Super. 256, 461 A.2d 1268 (1983).

■ Similarly, appellant's claim that he was prosecuted under an unconstitutional "statutory scheme" involving the IDSI offense is waived. It is raised for the first time on appeal. Appellant did not argue it at trial, in post-verdict motions or in his briefs in support thereof. As such, it will not be heard now. *See Commonwealth v. Maute,* 336 Pa.Super. 394, 485 A.2d 1138 (1984).

■ In an amended brief filed by leave of this court, appellant alleges that trial counsel was ineffective in that the jury "was permitted to consider" evidence that appellant and S.H. had engaged in an act of oral sex for money on the same day he solicited her for IDSI. It is axiomatic that before a party can prevail on a claim of ineffectiveness of trial counsel it is first necessary to prove the merit of the underlying claim of error. *See, e.g., Commonwealth v.*

additional proof was necessary to establish a prima facie case on the amended charges and appellant does not argue that he was unlawfully arrested or detained. Appellant cites us to no case, nor have we discovered one, which mandates that an accused is entitled to a second preliminary hearing after an information is amended, when an accused has properly been held for trial on the original charges.

*Pierce,* 515 Pa. 153, 527 A.2d 973 (1987); *Commonwealth v. Groff,* 378 Pa.Super. 353, 548 A.2d 1237, 1243 (1988). Without actual merit to the underlying claim, no possible prejudice to the defendant can be established. We find that trial counsel here could not have prevailed in an effort to exclude the testimony regarding the act of oral sex from evidence and that therefore, counsel cannot be ineffective for failing to object to the testimony.

While it is the general rule that evidence of a distinct criminal act will not be admissible to prove that the defendant has a criminal disposition or to unfairly prejudice the jury, such evidence is admissible in well-defined limited circumstances. *Commonwealth v. Nelson,* 389 Pa.Super. 417, 567 A.2d 673 (1989). Therefore, evidence of other crimes can be shown when it tends to prove motive, intent, absence of mistake or accident, common scheme, plan or design, or some other legitimate purpose. *Commonwealth v. Lawson,* 519 Pa. 175, 546 A.2d 589 (1988). In addition, such evidence may be admissible if it comprises a part of a sequence of events which is part of the natural development of the facts at issue. *Commonwealth v. Nolen,* 390 Pa.Super. 346, 568 A.2d 686 (1989).

The evidence that appellant and S.H. had engaged in an act of oral sex, which occurred in the office of his bar, after appellant had offered to pay S.H. $35.00 to do so, was probative on a number of issues and was clearly admissible. The evidence was relevant on the charge of promoting prostitution, in that it tended to establish that appellant knew S.H. was regularly engaging in sexual activity as a business. It was relevant to show appellant's state of mind when, subsequent to having engaged in oral sex for money with S.H., he then solicited her to commit IDSI. His conduct immediately preceding that request was probative of his intent to again engage S.H. in a sex act and of his intent to pay her for same. Thus, the evidence was also probative on the counts of criminal solicitation to commit prostitution. The evidence was also a part of the history of the event on trial, in that the act of oral sex occurred very

close in time, in the bar which appellant was accused of using for purposes of prostitution, and with the girl he repeatedly solicited for sexual purposes. Trial counsel was not ineffective for failing to attempt to keep from the jury this plainly admissible evidence.

Appellant's contention that the jury mistakenly may have convicted him of committing the oral sex act instead of convicting him of the solicitation to commit IDSI is without support on this record. The trial court's instructions made plain the nature of the charges and the specific acts alleged to constitute them. There was no conceivable way the jury could have regarded the court's instruction as giving them liberty to decide which act supported the verdict. Moreover, we note that with regard to December 13, 1988, the date the act of oral sex and the first solicitation to commit IDSI occurred, appellant's defense was that he was out-of-town and could not have committed either one. There is no merit in this argument.

Finally, we address appellant's sentencing claims. As noted above, appellant was convicted of promoting prostitution, corrupting the morals of a minor, one count of criminal solicitation to commit prostitution, and three counts of criminal solicitation to commit IDSI. The court sentenced appellant to: two and one half (2½) to five (5) years imprisonment for promoting prostitution; a consecutive sentence of equal length for corrupting the morals of a minor; a concurrent sentence of six (6) to twelve (12) years for one count of solicitation to commit IDSI; and to no further penalty on the remaining counts which were one count of solicitation to commit prostitution and two counts of solicitation to commit IDSI. Appellant makes two claims regarding the sentences imposed. First, he contends that the trial court erred in failing to merge corrupting the morals of a minor with promoting prostitution for sentencing purposes. Appellant also claims that the crimes code prohibits the conviction of more than one inchoate offense, when the criminal conduct was designed to commit or culminate in

the same crime. Thus, he challenges his convictions on the three counts of IDSI.

Appellant's argument that corrupting the morals of a minor and promoting prostitution merge for purposes of sentencing fails on two grounds. In the first place, it is now the law in Pennsylvania that crimes do not merge for purposes of sentencing unless one of the crimes is a lesser included offense of the other. In order to constitute a lesser included offense, the elements of the lesser crime "must be identical to and capable of being wholly subsumed within the elements of the greater offense, *and* the factual predicate for the lesser offense included offense must also be part of the factual predicate required to establish the greater offense." *Commonwealth v. Yates*, 386 Pa.Super. 282, 287, 562 A.2d 908, 911 (1989); *Commonwealth v. Blassingale*, 391 Pa.Super. 395, 571 A.2d 426 (1990). The crime of promoting prostitution requires that the individual charged permit the place under his control, management or supervision to be regularly used for purposes of prostitution. It does not necessarily include an act that corrupts or tends to corrupt the morals of a minor. Corrupting the morals of a minor is not a lesser included offense of promoting prostitution. Moreover, in the context of this case, the crimes of promoting prostitution and corrupting the morals of a minor did not arise from the same factual predicate. The promoting prostitution charge was predicated on appellant's conduct of regularly permitting his place of business to be used for prostitution. The corrupting a minor charge was based on appellant's specific solicitation of S.H. for IDSI. The jury could have convicted appellant of either offense without convicting him of the other since the conduct underlying each offense was distinct. As such, the crimes do not merge for purposes of sentencing. *See Commonwealth v. Mobley*, 399 Pa.Super. 108, 117, 581 A.2d 949, 953 (1990).

Lastly, appellant argues that the trial court erred in sentencing him for each conviction of solicitation to commit

IDSI. In support of this claim, appellant relies on 18 Pa.C.S. § 906 (Purdon 1983) which states:

**Multiple convictions barred**

A person may not be convicted of more than one offense defined by this chapter [inchoate crimes] for conduct designed to commit or to culminate in the commission of the same crime.

In the first place, the trial court did not sentence appellant to three sentences for solicitation to commit IDSI but rather imposed sentence on only one count. On the remaining two counts appellant received no further penalty. Therefore, it is clear that his complaint is without factual basis. This court has held on numerous occasions that section 906 is intended to prevent imposition of sentence on multiple inchoate offenses. Therefore, we have interpreted the term "convict[ion]" in section 906 to mean entry of a judgment of sentence not a finding of guilt by the jury. *See Commonwealth v. Maguire*, 307 Pa.Super. 80, 85, 452 A.2d 1047, 1049 (1982); *see also Commonwealth v. Hassine*, 340 Pa.Super. 318, 490 A.2d 438 (1985); *Commonwealth v.* Orlowski, *332 Pa.Super. 600, 481 A.2d 952 (1984).*[11]

■ Moreover, his convictions for three counts of criminal solicitation to commit IDSI do not violate section 906 of the crimes code for an additional reason. That section is designed to eliminate multiple convictions, i.e., judgments of sentence, for conduct which constitutes preparation for a single criminal objective. *Commonwealth v. Zappacosta,*

11. Appellant makes a similar argument with respect to the charge of soliciting for prostitution. He argues that he could not be "convicted and sentenced" on both soliciting for prostitution and soliciting to commit IDSI because to do so would violate section 906 by allowing multiple convictions for inchoate offenses designed to culminate in the same crime. Assuming that it would be proper in this case to conclude that criminal solicitation to commit prostitution and criminal solicitation to commit IDSI were offenses designed to culminate in the "same crime", a question we need not reach, appellant nevertheless cannot prevail on this argument. No judgment of sentence was imposed on the verdict of soliciting for prostitution. Therefore, based on the above-cited cases, no violation of section 906 occurred.

265 Pa.Super. 71, 401 A.2d 805 (1979). In the instant case, appellant solicited S.H. to commit IDSI on three separate, unrelated occasions which were several weeks apart. As such, the solicitations were discrete acts designed to culminate in three different crimes. Therefore, section 906 is inapplicable.

Judgment of sentence affirmed. Jurisdiction is relinquished.