J-A22020-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ROBIN SHRAWDER, | |
| Appellant | No. 2027 MDA 2014 |

Appeal from the Order Entered November 5, 2014
In the Court of Common Pleas of Lycoming County
Criminal Division at No(s): CP-41-CR-0002057-2014

BEFORE:  BOWES, JENKINS, AND PLATT,* JJ.

DISSENTING MEMORANDUM BY BOWES, J.:    **FILED NOVEMBER 20, 2015**

This Court continues to twist itself into Gordian knots to uphold retroactive application of a sex offender registration statute, SORNA,[1] to individuals who unquestionably had no notice of the new law at the time they pled guilty, or that a non-existent law would apply to them, or that they would have no ability to have an opportunity to escape its application.  I do agree that Appellant is foreclosed from asserting that he is not subject to any period of registration because he acquiesced in registering under a prior version of the current law.  Nevertheless, I dissent from the holding that he must register for life based on one criminal episode resulting in two findings

_____

[1] 42 Pa.C.S. § 9799.10-9799.41.

* Retired Senior Judge assigned to the Superior Court.

of guilt for luring a child into a motor vehicle—crimes for which he has completed serving his three-year probationary sentence and for which the Commonwealth previously declined to seek lifetime registration under a virtually identical statutory framework. Since the Commonwealth declined to invoke lifetime registration at that point, it should be foreclosed from doing so now.

Moreover, I agree with Appellant that his contractual plea bargain was violated by the addition of material terms to the agreement that were not contemplated by the parties when it was entered. This Court continues to ignore that in virtually no other setting, aside from retroactive application of SORNA, does a court authorize material terms to be added to a contract after the fact. Rather than engage in an analysis of what terms were agreed upon by the parties when the agreement was entered, we have instead considered the absence of express evidence regarding a registration requirement as proof that the individual acquiesced to non-existent terms being imposed at a later date. *See Commonwealth v. Giannantonio*, 114 A.3d 429 (Pa.Super. 2015). Such an interpretation of the law is not only untenable, but it turns contractual analysis on its head. If we are to continue to construe plea bargains in a contractual manner as required by applicable precedent, *see Commonwealth v. Anderson*, 996 A.2d 1184, 1191 (Pa.Super. 2010), we should do so faithfully and not to achieve a desired result due to the nature of the offenders involved.

Herein, the learned majority makes much of the fact that Appellant's plea was not structured to avoid registration. This fact is a court-created *non-sequitur* in cases such as this. There is no dispute that where a plea is structured to avoid registration or a certain period of registration, it is improper to require a different period of registration. ***See Commonwealth v. Hainesworth***, 82 A.3d 444 (Pa.Super. 2013) (*en banc*); ***Commonwealth v. Nase***, 104 A.3d 528 (Pa.Super. 2014); ***compare also Commonwealth v. Partee***, 86 A.3d 245 (Pa.Super. 2014) (defendant's violation of his probation resulted in him no longer being entitled to the original benefit of his plea bargain). However, this rationale does not answer the question of whether lifetime registration should be retroactively imposed where there was no reason for the defendant to negotiate to remove such registration in the first instance. Obviously, Appellant could not seek to avoid a lifetime of sex offender registration based solely on the commission of luring of a child into a motor vehicle when there was no law requiring it when his plea was tendered.[2]

_____

[2] As discussed later in the body of this writing, I acknowledge that under a subsequent interpretation of the governing statute, the Commonwealth could have sought to invoke lifetime registration. Since it did not, however, there was no reason for Appellant to negotiate and no case law interpreting the prior sex offender law as compelling lifetime registration. Frankly, as delineated *infra*, I view the decision by this Court that could have subjected Appellant to lifetime registration, ***Commonwealth v. Merolla***, 909 A.2d 337 (Pa.Super. 2006), as distinguishable.

Simply put, there was no reason to negotiate a different plea to avoid lifetime registration when the Commonwealth was not seeking lifetime registration. Indeed, the Commonwealth could not have removed a more serious charge subjecting Appellant to lifetime registration because he was *not charged with any such crimes*.[3] **See** Majority Memorandum, at 9 (finding fact that Commonwealth did not remove charges that would have resulted in lifetime registration significant). Further, the majority provides the red herring argument that the collateral consequences of Appellant's plea, that being registration, do not render his plea involuntary. **Id**. at 10. This observation fails to persuade because Appellant does not allege his plea was involuntary nor does he seek to withdraw his plea. Rather, Appellant is seeking specific enforcement of his plea. It is immaterial that registration is considered a collateral consequence under these facts because Appellant does not contest his plea. **See Nase**, **supra** at 533.

In **Commonwealth v. Kroh**, 654 A.2d 1168, 1172 (Pa.Super. 1995), this Court set forth that "[a]lthough a plea agreement occurs in a criminal context, it remains contractual in nature and is to be analyzed under contract-law standards." Consistent with this approach, the **Kroh** Court

---

[3] The Commonwealth charged Appellant with two counts each of luring a child into a motor vehicle and corruption of a minor. Appellant is not required to register based on the corruption of a minor charges. **See Commonwealth v. Sampolski**, 89 A.3d 1287 (Pa.Super. 2014).

opined that ambiguities in the terms of the plea agreement are to be construed against the Commonwealth. *Id*. Under ordinary contract principles, the terms of a contract are those agreed to by the parties. Indeed, a contract requires six elements: (1) mutual assent; (2) consideration; (3) contracting parties; (4) an agreement that is sufficiently definite; (5) parties that have the legal capacity to make a contract; and (6) an absence of any legal prohibition to the formation of the agreement. John E. Murray Jr., *Murray on Contracts*, at 59 (4th Ed. 2001). In deciding the terms of a plea agreement as with other contracts, we resolve any dispute by applying objective standards. *Kroh*, *supra* at 1172. Contracts may be oral or written, and conduct or acts may evidence an agreement. Additional material terms generally do not become part of an agreement unless those terms are agreed upon either through a writing, an express oral agreement, or a course of performance, including the conduct of the parties.

Here, the actual terms of the agreement are relatively straightforward. Appellant agreed to plead *nolo contendere* to two counts each of luring a child into a motor vehicle and corruption of a minor. In exchange, the Commonwealth did not seek a period of incarceration. The court, it should be noted, also failed to inform Appellant that he was subject to sex offender registration either when he entered his *nolo contendere* plea on April 12, 2005, or when he was sentenced on May 26, 2005. Nonetheless, at that

time, a person found guilty and sentenced for committing the crime of luring a child into a motor vehicle was subject to a ten-year period of registration.

The Commonwealth waived its right to seek a determination by the court that Appellant was a sexually violent predator ("SVP") by failing to request a SVP hearing. A finding that Appellant was an SVP would have mandated lifetime reporting. In addition, the Commonwealth did not seek to require lifetime registration because Appellant had pled *nolo contendere* to two counts of luring. *See **Commonwealth v. Merolla***, 909 A.2d 337 (Pa.Super. 2006) (holding that the then-applicable sex offender registration statute required lifetime registration for a person found guilty at the same time of multiple offenses, including luring of a child into a motor vehicle).

In the beginning of August 2006, a full year after Appellant's sentencing, the Pennsylvania State Police first notified Appellant that he was required to register as a sex offender for ten years. Critically, the Pennsylvania State Police did not seek to require Appellant to register for life under the then-existing statute, 42 Pa.C.S. § 9795(b)(1), because he pled guilty to two counts of luring. Moreover, the Commonwealth, via the Pennsylvania State Police, did not inform Appellant after the decision in *Merolla*, *supra*, which was decided on September 28, 2006, that he was required to register for life. That decision interpreted § 9795(b)(1) and its language that "An individual with two or more convictions of any of the

offenses set forth in subsection (a)[,]" which included luring, ***see Merolla***, ***supra*** at 347 n.15, were subject to lifetime registration. ***Id***. at 346.

These facts, in my view, compel the conclusion that the Commonwealth is estopped from now seeking lifetime registration under the provision in SORNA at issue. Indeed, it has waived any such argument. To conclude otherwise is to reward the Commonwealth for its dilatory arguments that could have been forwarded when Appellant was initially sentenced. Of course, I am aware that Appellant did not contest his ten-year registration period and registered on August 13, 2006. He has continued to register annually since that time. For this reason, I would find that he is estopped from receiving relief in the nature of completely removing the registration requirement. Having acquiesced to the registration period in 2006, Appellant has waived any challenge to non-registration and must at least register for ten years.[4] Moreover, contract law incorporates existing law. ***See Nase***, ***supra*** at 534. Appellant was required to register for ten years based on his plea despite the court's failure to notify him of such.

---

[4] The Commonwealth's failure to have Appellant register for one year should be attributed to it because commencement of registration is intended to start when a person begins his or her probationary sentence if they are not incarcerated.

On December 20, 2012, SORNA went into effect. That statute created a three-tiered classification of sex offenders and retroactively increased registration for luring a child into a motor vehicle to fifteen years. 42 Pa.C.S. § 9799.14(b); 42 Pa.C.S. § 9799.15(a)(1). The fifteen year period is for Tier-I offenders. *See* 42 Pa.C.S. § 9799.15. Lifetime registration is required for Tier-III offenders. 42 Pa.C.S. § 9799.15(a)(3). The statute classifies those with, "[t]wo or more convictions of offenses listed as Tier I or Tier II sexual offenses[,]" as Tier-III offenders, subject to lifetime registration. 42 Pa.C.S. § 9799.14(d)(16).

Appellant and the Commonwealth did not mutually assent to lifetime registration in exchange for Appellant's plea. Lifetime registration was not a term of the initial plea nor is it a term over which a reasonable person would not have negotiated. Were this any other contractual scenario, it would be beyond cavil that the Commonwealth could not retroactively add a material term to the plea bargain and require Appellant to register beyond ten years. This conclusion is reinforced where the defendant is no longer serving any type of sentence. *Compare Commonwealth v. Benner*, 853 A.2d 1068, 1072 (Pa.Super. 2004) ("We read these cases to suggest that the collateral effect of current [Megan's Law] legislation may be imposed on the defendant **so long as he remains in the custody of correctional authorities to discharge any part of his sentence for the sex offense**.").

In this respect, I add that retroactive application of any law, except ameliorative criminal law, has long been disfavored precisely because it is perceived as fundamentally unfair. William Blackstone, in his influential Commentaries on the Laws of England, posited, "All laws should be therefore made to commence *in futuro*, and be notified before their commencement[.]" 1 Tucker's Blackstone, 46 (Philadelphia, 1803). "[S]ince the beginning of the Republic and indeed since the early days of the common law: absent specific indication to the contrary, the operation of nonpenal legislation is prospective only." ***Kaiser Aluminum & Chemical Corp. v. Bonjorno***, 494 U.S. 827, 841 (1990) (Scalia, J., concurring). Similarly, this Court in ***Anderson v. Sunray Elec. Inc.***, 98 A.2d 374, 375 (Pa.Super. 1953) (emphasis added), has recognized, "Unless the legislature clearly manifests its intention otherwise, no law may be construed to be retroactive, and **then only where it does not destroy vested rights or impair the obligations of contracts.**" ***See also*** 1 Pa.C.S. § 1926.[5]

While the legislature here did expressly indicate that this law would apply retroactively, that does not alter the fact that from the early days of this Commonwealth our courts have recognized the odious nature of retroactive civil laws. In ***Commonwealth v. Duane***, 1 Binn. 601 (Pa.

---

[5] 1 Pa.C.S. § 1926 codified Pennsylvania common law.

1809), the Pennsylvania Supreme Court distinguished between the prohibition against civil retroactive laws and ameliorative retrospective criminal legislation. There, the defendant was indicted and found guilty of committing a libel against Pennsylvania's governor in his official capacity. However, prior to his judgment of sentence, the legislature passed a law stating that no person was to be prosecuted by indictment for publication of papers or for investigating the official conduct of men in a public capacity. Counsel for Duane argued that the law interfered with no vested right, did not violate any right of property, and effectively terminated his prosecution.

The Pennsylvania Supreme Court agreed, with Chief Justice Tilghman stating, "If the same expression had been used, as applied to a civil action, I should have thought myself warranted in giving it a different construction, because then it would have operated in a retrospective manner, so as to take away from a citizen a vested right. But there is a wide difference between a civil and a criminal action." *Id*. at 608-609.

Justice Joseph Story, writing while on circuit, offered a concise summary of retroactive civil laws, which has subsequently been adopted by the United States Supreme Court, *see Landgraf v. USI Film Products*, 511 U.S. 244 (1994), and utilized by courts in this Commonwealth. Justice Story opined, "every statute, which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or

- 10 -

considerations already past, must be deemed retrospective[.]" ***Society for the Propagation of the Gospel v. Wheeler***, 22 F.Cas. 756, 767 (1814).[6] Justice Duncan of the Pennsylvania Supreme Court echoed this definition, cited Justice Story's opinion in Justice Duncan's opinion in ***Eakin v. Raub***, 12 Serg. & Rawle 330 (Pa. 1825), and recognized the distinction between the prohibition against civil retroactive law and ameliorative criminal legislation. ***Id***. at 362.[7]

A number of other state courts have construed their versions of SORNA as violating constitutional retroactivity clauses or that state's *ex post facto* prohibition. ***Starkey v. Oklahoma Dept. of Corrections***, 305 P.3d 1004 (Okla. 2013) (SORNA statute violated *ex post facto* clause of state constitution); ***Doe v. Department of Public Safety and Correctional***

_____

[6] This Court has defined a vested right as one that "so completely and definitely belongs to a person that it cannot be impaired or taken away without the person's consent." ***In re R.T.,*** 778 A.2d 670, 679 (Pa.Super. 2001). In ***Eakin v. Raub***, 12 Serg. & Rawle 330, 360 (Pa. 1825), Justice Duncan opined, "a vested right is where a man has power to do certain actions, or to possess certain things, according to the laws of the land." One's liberty interest is unquestionably a vested right, which is supposed to only be deprived via due process.

[7] Civil retrospective law was also permissible where, the law "does not violate the constitutional prohibitions," and provided "to a party a remedy which he did not previously possess, or modify an existing remedy, or remove an impediment in the way of recovering redress by legal proceedings." ***Hepburn v. Curts***, 7 Watts 300, 301 (Pa. 1838). Thus, statutory law that benefitted individuals without invading the vested rights of another was lawful.

*Services*, 62 A.3d 123 (Md. 2013) (Maryland sex offender statute violated *ex post facto* clause of state constitution); *State v. Williams*, 952 N.E.2d 1108, 1113 (Ohio 2011) (Ohio SORNA statute violated state constitutional prohibition against retroactive laws); *cf*. *State v. Bodyke*, 933 N.E.2d 753 (Ohio 2010) (Ohio SORNA violated separation of powers) *State v. Letalien,* 985 A.2d 4 (Me. 2009) (*ex post facto* violation to apply retroactively the enhanced requirements of SORNA of 1999 when, by so doing, the application revises and enhances sex offender registration requirements that were a part of the offender's original sentence); *but see Doe I v. Williams*, 61 A.3d 718 (Me. 2013) (SORNA statute at issue did not violate substantive or procedural due process or *ex post facto* clause).

Conversely, several states have upheld retroactive sex offender registration changes under *ex post facto* and due process challenges. *Doe I v. Williams*, *supra*; *Roe v. Replogle*, 408 S.W.3d 759 (Mo. 2013) (federal SORNA law, applicable to residents of Missouri, did not violate substantive due process); *Smith v. Commonwealth*, 743 S.E.2d 146 (Va. 2013). As recognized by Appellant, this Court has rejected a federal *ex post facto* challenge to SORNA. *Commonwealth v. Perez*, 97 A.3d 747 (Pa.Super. 2014).[8]

_____

[8] The Commonwealth Court in *Coppolino v. Noonan*, 102 A.3d 1254 (Pa.Cmwlth. 2014), *allowance of appeal granted*, 132 MAP 2014 (July 20,
*(Footnote Continued Next Page)*

I acknowledge that this Court is bound by **Perez** and its conclusion that SORNA is not an *ex post facto* law since our courts do not consider SORNA to be punitive.[9]  Indeed, Appellant does not even attempt to advance such a position nor does he argue that under an originalist interpretation of the Pennsylvania Constitution's *ex post facto* clause, such a law should be classified as penal.  Of course, I note that even before the adoption of the Pennsylvania Constitution, the *Magna Carta* exclaimed, "No Freeman shall be taken, or imprisoned, or be disseised of his Freehold, or Liberties, or free Customs, or be outlawed, or exiled, or any otherwise destroyed; nor will we not pass upon him, nor condemn him, but by lawful Judgment of his Peers, or by Law of the Land."  **See In re Winship**,  397 U.S. 358, 378-379, (1970) (Black, J., dissenting).

As far back as 1642, Lord Edward Coke, in his influential Institutes, opined that "due process of law" is synonymous with "law of the land."  **Id**. at 379; **Hoboken Land**, **supra** at 276.  Justice Curtis, writing in 1855 for the United States Supreme Court, opined,

*(Footnote Continued)* ────────────────

2015), did hold that retroactive in-person registration under SORNA was unconstitutionally punitive.  It severed that provision from the remainder of the law.

[9] I recognize that SORNA's requirements only occur as a direct result of a criminal conviction, are generally imposed at sentencing, except in cases where the defendant has already been sentenced or, as in this case, is no longer even serving a sentence, and are often more onerous than traditional probation and parole requirements.

The constitutions which had been adopted by the several States before the formation of the federal constitution, following the language of the great charter more closely, generally contained the words, 'but by the judgment of his peers, or the law of the land.' The ordinance of congress of July 13, 1787, for the government of the territory of the United States northwest of the River Ohio, used the same words.

*Murray v. Hoboken Land & Imp. Co.,* 59 U.S. 272, 276 (1855). He continued by acknowledging that the federal constitution "contains no description of those processes which it was intended to allow or forbid. It does not even declare what principles are to be applied to ascertain whether it be due process." *Id*. However, the High Court set forth, "It is manifest that it was not left to the legislative power to enact any process which might be devised. The article is a restraint on the legislative as well as on the executive and judicial powers of the government, and cannot be so construed as to leave congress free to make any process 'due process of law,' by its mere will." *Id*. Even before Justice Curtis' opinion, the Pennsylvania Supreme Court recognized that due process is not satisfied by the mere passage of legislation.

In *Norman v. Heist*, 5 Watts & Serg. 171 (Pa. 1843), the Court held that Pennsylvania's law of the land provision was designed "to exclude arbitrary power from every branch of the government; and there would be no exclusion of it, if such rescripts or decrees were allowed to take effect in the form of a statute." *Heist*, *supra* at 173. There, the Pennsylvania High Court ruled that a statute that retroactively deprived a party of property

violated due process. The "law of the land" had to be "a pre-existent rule of conduct[.]" *Id*. In **Brown v. Hummel**, 6 Pa. 86 (1847), the Pennsylvania Supreme Court eloquently stated,

> What, then, is the law of the land, as it relates to the protection of private rights? Does it mean bills of attainder in the shape of an act of Assembly, whereby a man's property is swept away from him without hearing trial, or judgment, or the opportunity of making known his rights or producing his evidence? It certainly does not. It was to guard against such things which had been common in the reign of the Stuarts and their predecessors, and with which our forefathers of the Anglo-Saxon race were familiar, that these irrevocable and unassailable provisions were introduced into the constitution. The law of the land does not mean acts of Assembly in regard to private rights, franchises, and interests, which are the subject of property and individual dominion. But it means what is clearly indicated by the other provisions of the bill of rights, to wit: the law of the individual case, as established in a fair and open trial, or an opportunity given for one in court, and by due course and process of law. "I am a Roman citizen," were once words of power, which brought the proudest proconsul to a pause, when he was about to commit oppression: and the talismanic words, I am a citizen of Pennsylvania, secures to the individual his private rights, unless they are taken from him by a trial, where he has an opportunity of being heard by himself, his counsel, and his testimony, *more majorum*, according to the laws and customs of our fathers, and the securities and safeguards of the constitution.

**Hummel**, *supra* at 91.

Counsel in **Menges v. Dentler**, 33 Pa. 495 (1859), also argued that "law of the land" did not merely mean legislative acts. Rather, they maintained that laws that impaired or destroyed vested rights were in violation of due process. The **Dentler** Court considered both Article I, § 9

and Article I, § 11 of the Pennsylvania Constitution, and accepted that

position. In doing so, it set forth,

> These provisions are taken from Magna Charta; but they have higher value here than in England, just as a constitution adopted by the people is of higher value than a mere act of Parliament. Parliament may disregard Magna Charta, but our legislature must obey the constitution. These provisions are, therefore, imperative limitations of legislative authority, and imperative impositions of judicial duty.

**Dentler**, **supra** at 498. The Court continued, admittedly under the facts of

the issue in question, and posited,

> The law which gives character to a case, and by which it is to be decided (excluding the forms of coming to a decision), is the law that is inherent in the case, and constitutes part of it when it arises as a complete transaction between the parties. If this law be changed or annulled, the case is changed, and justice denied, and the due course of law violated.

**Id**. These principles should apply no less than when the vested right in

question is not a property right but a liberty right against lifetime sex

offender registration where the defendant has completed serving his

sentence and had no notice of increased registration requirements.[10]

---

[10] The only Pennsylvania Supreme Court opinion to address SORNA and procedural due process held that SORNA violated the rights of juveniles. **See In re J.B.**, 107 A.3d 1 (Pa. 2014). Therein, the High Court ruled that registration for juvenile offenders, all of whom were previously not subject to sex offender registration, violated due process. The juveniles in that case each had been adjudicated delinquent before SORNA's effective date, but were still subject to juvenile court supervision on that date. Thus, unlike Appellant herein, the juveniles were still under court supervision. Pursuant to SORNA, juveniles who were subject to the jurisdiction of the juvenile

*(Footnote Continued Next Page)*

I write further to address the trial court and majority's application of *Merolla* to this matter. I have already outlined my position that the Commonwealth should be estopped from seeking application of *Merolla* since it declined to advance this position during Appellant's last nine years of registration. Moreover, even if *Merolla* was a proper interpretation of Megan's Law II, it is distinguishable. In *Merolla*, the defendant committed his crimes against multiple victims over a period of years. Here, Appellant engaged in a single criminal episode on the same day within minutes of each other, albeit with two minor females. That is, he asked both the teenage girls, who were together, to masturbate him and perform oral sex in exchange for money. Reprehensible as these actions are, they are easily distinct from *Merolla*.

In my view, the plurality opinion of the learned former Chief Justice Castille, in *Commonwealth v. Gehris*, 54 A.3d 862 (Pa. 2012), also offers persuasive authority for rejecting application of *Merolla*. At issue in that

_(Footnote Continued)_ ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

court, on the basis of certain sex offense adjudications, were required to register as sex offenders. Juveniles required to register for life, contrary to adults, were to be afforded a hearing twenty-five years after the completion of court supervision. At that hearing, the juvenile offender would be able to have registration terminated if he or she met certain criteria. The juvenile offender would have to show by clear and convincing evidence that he or she met the statutory criteria. The Supreme Court focused extensively on the difference between juveniles and adults and concluded that creating an irrebuttable presumption that the juveniles, based solely on their adjudication, demonstrated a high risk of recidivism, was unconstitutional.

case was the same statute as in **Merolla**. In **Gehris**, a forty-two year old man repeatedly engaged in sexually explicit conversations with an individual he thought was a thirteen-year-old girl as well as a nineteen-year-old woman. He also mailed a digital camera to the person he believed was the thirteen-year-old girl that included a picture of his genitalia. In addition, he asked for nude pictures and attempted to arrange a meeting with the supposed thirteen-year-old girl to have sex. The defendant pled guilty to solicitation to commit sexual exploitation of children and solicitation for the sexual abuse of children. The trial court imposed lifetime registration and this Court affirmed, relying on **Merolla**.

The Pennsylvania Supreme Court split evenly three-to-three, with Chief Justice Castille, joined by Justices Saylor and Baer, writing in support of reversal. Chief Justice Castille detailed the recidivist philosophy of certain criminal statutes, beginning with a quote from William Hawkins, Pleas of the Crown, published in 1716, and moving forward through Pennsylvania case law applying the recidivist philosophy to various statutes. He found that Megan's Law registration was a graduated scheme based on a recidivist philosophy.[11]

---

[11] The Pennsylvania Supreme Court also granted allowance of appeal in **Commonwealth v. Mielnicki**, 71 A.3d 245 (Pa. 2013), to determine if **Merolla** was properly decided. However, the Supreme Court subsequently
*(Footnote Continued Next Page)*

The Commonwealth Court subsequently adopted Chief Justice Castille's position in *A.S. v. Pennsylvania State Police*, 87 A.3d 917 (Pa.Cmwlth. 2014) (*en banc*). Indeed, had Appellant filed a mandamus petition against the Pennsylvania State Police with the Commonwealth Court, he likely would have been entitled to relief. It would be incongruous for different results to occur simply based on where the initial action was commenced.

In *A.S.*, the defendant was twenty-one years old when he engaged in consensual sex with a sixteen-year old female. Despite the sexual activity being non-criminal, he also used a camera to photograph the two engaging in sexual activity and persuaded the female to take pictures of herself in sexual positions. This conduct was criminal. A.S. pled guilty to one count each of sexual abuse of a child, unlawful contact with a minor, and corruption of a minor. At sentencing, the prosecutor, trial court, and A.S. all proceeded under the assumption that he would be subject to a ten-year period of registration. A.S. registered for ten years, and afterward sought to have his name removed from the registry. The Pennsylvania State Police refused, contending that he had to register for life. The Commonwealth Court adopted Chief Justice Castille's view. It found that because the

---

*(Footnote Continued)*

dismissed that appeal as improvidently granted. *Commonwealth v. Mielnicki*, 105 A.3d 1256 (Pa. 2014).

conduct was a single criminal episode and A.S. did not have any chance at reforming, he was subject to a ten-year period of registration.

The Opinion in Support of Affirmance in **Gehris** ("**Gehris** OISA") and the **Merolla** Court came to contrary conclusions by reasoning that the phrase "two or more convictions" in the applicable provision of Megan's Law was not ambiguous. This, however, ignored long-standing Pennsylvania law construing the words "convicted" and "conviction." **See Commonwealth v. Hale**, 85 A.3d 570 (Pa.Super. 2014), *allowance of appeal granted on other ground*, 113 A.3d 1228 (Pa. 2014); **Commonwealth v. Thompson**, 106 A.3d 742 (Pa.Super. 2014) (Bowes, J., concurring) (joined by Donohue, J.).

In both **Hale** and **Thompson**, this author collected cases regarding interpretation of the words "convicted" or "conviction." In **Hale**, we set forth, "[t]he term 'conviction' and its related term 'convicted' have a distinct legal meaning under the law." **Hale**, *supra* at 581. Specifically, the words have both a popular and technical meaning. **Id**. (quoting **Commonwealth v. Palarino**, 77 A.2d 665, 667 (Pa.Super. 1951)). The popular meaning is a verdict of guilty or a plea of guilty. The technical meaning is a judgment of sentence. **Id**.

Indeed, in one of the oldest Pennsylvania cases discussing the meaning of conviction, **Smith v. Commonwealth**, 14 Serg. & Rawle, 69 (1826), the Pennsylvania Supreme Court stated, "When the law speaks of conviction, it means a judgment, and not merely a verdict, which, in

common parlance, is called a conviction." *Id*. at 70. That interpretation was followed in *Commonwealth v. Black*, 407 A.2d 403 (Pa.Super. 1979), and *Commonwealth v. Maguire*, 452 A.2d 1047 (Pa.Super. 1982). The *Maguire* Court stated, "appellant construes 'convicted' as equivalent to the jury's 'verdict,' which it is not." *Id*. 1049.

Concomitantly, in *Commonwealth v. Grekis*, 601 A.2d 1284 (Pa.Super. 1992), this Court held that "we have interpreted the term 'conviction' in [18 Pa.C.S.] section 906 to mean entry of a judgment of sentence not a finding of guilt by the jury." *Id*. at 1294; *see also Commonwealth v. Hassine*, 490 A.2d 438, 460 (Pa.Super. 1985) ("we accept the word 'conviction' as referring to post-verdict judgment by a court, and not to the verdict by the jury itself"). In *Commonwealth v. Socci*, 110 A.2d 862 (Pa.Super. 1955), this Court opined that the term "conviction" "must be given its strict technical meaning. There must be a judgment of conviction." *Id*. at 863 (quoting *Palarino*, *supra* at 667).

Our legislature, however, has also used the term conviction in its ordinary sense as well. *See* 18 Pa.C.S. § 109; *Thompson*, *supra*; *Commonwealth v. Kimmel*, 565 A.2d 426, 427 n.2 (Pa. 1989) (quoting *Commonwealth v. Beasley*, 479 A.2d 460 (Pa. 1984), and stating, "the term 'convicted' means 'found guilty' and not 'found guilty and sentenced.'").

Indeed, in *Thompson*, I opined that I was "troubled by the apparent inconsistency in our interpretation of the words 'convicted' and 'conviction.'

- 21 -

In my view, the legislature would do well to define the words 'conviction' or 'convicted' to reflect when it is using those words in either their popular or technical sense." ***Thompson***, ***supra*** at 768. Our recent interpretations have largely been one-sided, in favor of the Commonwealth. This case law reflects that whatever interpretation the words are to be given, the ***Gehris*** OISA and ***Merolla*** Court were mistaken in finding that the language is unambiguous.[12]

The decision by the trial court and the majority decision to affirm results in a denial of procedural due process, inverts contract law, violates principles of fundamental fairness, allows the Commonwealth to successfully assert arguments that it declined to raise and waived almost a decade ago, and applies a case that arguably was erroneously decided and is plainly distinguishable. Only through legal gymnastics can this Court continue to uphold retroactive application of SORNA to those no longer serving a sentence as legally sound. In my considered view, if not for the fact that SORNA applies to sex offenders, such serious constitutional and contractual law concerns would not be tolerated. For all the aforementioned reasons, I respectfully dissent.

---

[12] At the very least, we should consider *en banc* review to reexamine ***Merolla***.