J-A07017-15

2015 PA Super 91

| | |
|---|---|
| IN THE INTEREST OF: D.G., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: D.G. | |
| | No. 1198 WDA 2014 |

Appeal from the Order Entered July 3, 2014
In the Court of Common Pleas of Erie County
Criminal Division at No(s): CP-25-JV-0000059-2014,
CP-25-JV-0000343-2013

BEFORE: BENDER, P.J.E., LAZARUS, J., and MUNDY, J.

OPINION BY LAZARUS, J.:                                 **FILED APRIL 21, 2015**

D.G. appeals from the disposition order entered following his adjudication of delinquency by the Court of Common Pleas of Erie County based on the following offenses: (1) conspiracy to commit criminal trespass,[1] and (2) criminal trespass.[2] Upon review, we affirm.

The facts of this case are as follows. On August 24, 2013, at approximately midnight, Karar Al-Dafaai received a phone call from ADT Security Services, Inc., notifying him that the security alarm had gone off at his property located at 928 East Avenue in Erie. Al-Dafaai is the owner of a Stop N Go convenience store at this location. The building also contains a vacant upstairs apartment that is connected to the Stop N Go.

_____

[1] 18 Pa.C.S. § 903(a).

[2] 18 Pa.C.S. § 3503(a)(1)(ii).

After receiving the call from ADT, Al-Dafaai drove directly to the property, located two blocks from his home. When he arrived, he saw two juveniles standing outside the property, whom he identified as D.G. and S.J. Upon arrival, he also observed that the building was shaking, consistent with an attempt to kick in the secure door to gain access to the Stop N Go.

After he got out of his car, Al-Dafaai engaged in a brief confrontation with the two juveniles, during which time he flagged down an approaching police car. At that time, the two juveniles fled. As they fled, Al-Dafaai noticed a third individual, Q.M., jump off the building's roof and into the adjacent alley, where D.G. and S.J. had also fled.[3]

At that time, Lieutenant Steven Goozdich of the Erie Police Department, having been waived down by Al-Dafaai and informed of the suspected robbery, approached the scene. Lieutenant Goozdich drew his weapon and entered the alley, where he saw three to four individuals coming off the roof and gathering at a fence near the end of the alley. He yelled, "police, stop," and one person went over the fence and at least one other individual ran off in the opposite direction. Q.M. stood directly in front of Lieutenant Goozdich and hesitated, deciding which way to run. Lieutenant Goozdich, with gun drawn, commanded the juveniles to stop, but was only able to apprehend Q.M.

_____

[3] While S.J., Q.M., and D.G. were subjects of the same adjudication proceeding, S.J. and Q.M. are not parties to this appeal.

Al-Dafaai later testified that he was preparing the apartment to be rented; the barbed wire on the window to the apartment had been pulled back; and the ADT security sensors on the window had been tripped. Additionally, the door that leads into the upstairs apartment from the first floor had been kicked in. The downstairs landing had a second door that led into the Stop N Go and was secured by ADT sensors. That door had been kicked in and the sensors were jarred loose.

Subsequently, Lieutenant Goozdich put out a radio call regarding the incident. Sergeant Edward Noble received that call and within minutes, observed two individuals matching the juveniles' descriptions in a parking lot approximately one block north of the Stop N Go. Sergeant Noble detained these individuals, and Al-Dafaai identified one of them as S.J. The other individual was released.

A second nearby officer, Patrolman Jason Russell, also received the radio call in an unmarked police car, and saw a juvenile matching the description of one of the perpetrators approximately one block south of the Stop N Go. Patrolman Russell apprehended the juvenile, later determined to be D.G., observing that he was breathing heavily and sweating profusely. Al-Dafaai later positively identified D.G. as one of the individuals he had seen at the Stop N Go.

On August 28, 2013, D.G., S.J., and Q.M., were charged with criminal conspiracy to commit burglary,[4] and burglary.[5]  An arraignment was held on August 30, 2013, at which time each of the juveniles denied the allegations.

On September 19, 2013, Al-Dafaai completed a restitution claim form for $1,466.00.  Attached to that form were copies from his accounts book which set forth the following expenses:  a $300.00 payment in cash to Kraus Hardware on August 27, 2013 for the costs of the door and frame; a $500.00 payment in cash to ADT on August 27, 2013, for the costs of the ADT alarm repair; and a $186.00 payment in cash to Kraus on August 27, 2013, for the costs of window repair.

A combined denial hearing[6] was held before the court on February 26, 2014, at which all three juveniles were represented by counsel.  Following testimony and argument of counsel, the court concluded that the juveniles engaged in a conspiracy.  However, the court concluded that the facts supported criminal trespass, rather than burglary.  Consequently, the court made findings that the juveniles had committed acts constituting conspiracy to commit criminal trespass and criminal trespass.

_____

[4] 18 Pa.C.S. § 903(a).

[5] 18 Pa.C.S. § 3502(a)(1).

[6] The Court of Common Pleas of Erie County refers to a delinquency hearing as a denial hearing throughout its opinion.

Counsel for D.G. objected to the court's findings, which the court construed as an oral motion to reconsider. The court took the motion under advisement and, following the receipt of briefs and oral argument, the court denied the motion on April 4, 2014.

At a separate adjudication hearing on June 5, 2014, D.G. admitted to attempting to commit robbery by removing a wallet from a student's pants pocket at East High School.

Following a consolidated dispositional hearing on July 3, 2014, the court adjudicated D.G. delinquent and placed him at the Glen Mills School. Further, the court ordered that D.G. pay restitution based on the accounting submitted by Al-Dafaai. The Court apportioned the total damages equally among the juveniles, ordering each to pay $488.67. Also, the Court's finding of restitution against D.G. was made without prejudice to allow him the opportunity to request a restitution hearing. D.G. never requested such a hearing.

 D.G. then filed a timely notice of appeal on July 24, 2014. On August 12, 2014, D.G. filed a court-ordered statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(b).

On appeal, D.G. raises the following issues:

(1)    Whether the trial court erred when it amended the allegations of delinquency to include different allegations, and such amendment was made *sua sponte*, at the conclusion of the denial hearing, with no notice to the juvenile.

(2)    Whether the trial court erred in ordering restitution to be paid without credible evidence substantiating the amount

- 5 -

ordered, and without taking into account the juvenile's ability to pay, or his role in the underlying offense.

Appellant's Brief, at 2.

D.G. first challenges the court's *sua sponte* amendment of the charges brought at the delinquency adjudication. D.G.'s claim stems from Pennsylvania Rule of Juvenile Court Procedure 236, which provides in relevant part:

**Rule 232. Contents of Written Allegation**

Every written allegation shall contain:

\*\*\*\*\*

(6)(a) a summary of the facts sufficient to advise the juvenile of the nature of the offense alleged; and
(b) the official or customary citation of the statute and section, or other provision of the law which the juvenile is alleged to have violated.

Pa.R.J.C.P. 232(6).

Further, D.G. cites to Pa.R.J.C.P. 334, which states in relevant part:

**Rule 334. Amendment of Petition**

\*\*\*\*\*

(2) The court shall not allow a petition to be amended if the petition alleges a different set of events or offenses, where the elements or defenses are materially different from the elements or defenses to the offense originally petitioned.

Pa.R.J.C.P. 334(2).

Based on those rules, D.G. argues that the lower court violated his due process rights by amending the charges brought against him and failing to provide adequate notice, thus depriving him of an opportunity to present a

defense for the separate charge of trespass. In evaluating challenges to the amendment of criminal informations, this Court has set forth the following standard of review:

> In **Commonwealth v. Mentzer**, 18 A.3d 1200 (Pa. Super. 2011), we set forth our considerations in determining whether the trial court erred in permitting the amendment of the information.
>
> [W]hen presented with a question concerning the propriety of an amendment, we consider:
>
> [w]hether the crimes specified in the original indictment or information involve the same basic elements and evolved out of the same factual situation as the crimes specified in the amended indictment or information. If so, then the defendant is deemed to have been placed on notice regarding his alleged criminal conduct. If, however, the amended provision alleges a different set of events, or the elements or defenses to the amended crime are materially different from the elements or defenses to the crime originally charged, such that the defendant would be prejudiced by the change, then the amendment is not permitted. Additionally, [i]n reviewing a grant to amend an information, the Court will look to whether the appellant was fully apprised of the factual scenario which supports the charges against him. Where the crimes specified in the original information involved the same basic elements and arose out of the same factual situation as the crime added by the amendment, the appellant is deemed to have been placed on notice regarding his alleged criminal conduct and no prejudice to defendant results.
>
> Further, the factors which the trial court must consider in determining whether an amendment is prejudicial are:
>
> (1) whether the amendment changes the factual scenario supporting the charges; (2) whether the amendment adds new facts previously unknown to the defendant; (3) whether the entire factual scenario was developed during a preliminary hearing; (4) whether the description of the charges changed with the amendment; (5) whether a change in defense strategy was necessitated by the amendment; and (6) whether the timing

of the Commonwealth's request for amendment allowed for ample notice and preparation.

***Commonwealth v. Beck***, 78 A.3d 656, 660 (Pa. Super. 2013) (citations omitted).

The central inquiry, therefore, is whether D.G. was prejudiced by the lower court's amendment of the charges brought against him. Initially, we agree that criminal trespass is not a lesser included offense of burglary, as trespass contains the separate element of knowledge. ***See Commonwealth v. Carter***, 393 A.2d 660 (Pa. Super. 1978). Such a finding, however, does not render D.G. *per se* prejudiced by the amendment. "The law does not disallow all proposed changes which involve offenses with different elements, but only those which constitute such material differences that the defendant is prejudiced thereby." ***Commonwealth v. Grekis,*** 601 A.2d 1284, 1288, n.6 (Pa. Super. 1992).

Our decision must turn, therefore, on whether, in this matter, criminal trespass and burglary are materially different. Section 3502 of the Crimes Code defines burglary, in relevant part, as follows:

**§3502. Burglary**

 **(a) Offense Defined** – A person commits the offense of burglary if, with the intent to commit a crime therein, the person

     (1) enters a building or occupied structure . . . in which at the time of the offense no person is present.

*****

**(b) Defense** – It is a defense to prosecution for burglary if any of the following exists at the time of the offense:

- 8 -

(1) The building or structure was abandoned.

(2) The premises are open to the public.

(3) The actor is licensed or privileged to enter.

18 Pa.C.S. § 3502(a)(1); (b)(1)-(3).

Section 3503 of the Crimes Code defines criminal trespass, in relevant part, as follows:

**§3503. Criminal Trespass**

**(a) Buildings and occupied structures.**—

(1) A person commits an offense if, knowing that he is not licensed or privileged to do so, he:

(i) enters, gains entry by subterfuge or surreptitiously remains in any building or occupied structure or separately secured or occupied portion thereof; or

(ii) breaks into any building or occupied structure or separately secured or occupied portion thereof.

\*\*\*\*\*

**(c) Defenses** –It is a defense to prosecution under this section that:

(1) a building or occupied structure involved in an offense under subsection (a) of this section was abandoned;

(2) the premises were at the time open to members of the public and the actor complied with all lawful conditions imposed on access to or remaining in the premises; or

(3) the actor reasonably believed that the owner of the premises, or other person empowered to license access thereto, would have licensed him to enter or remain.

18 Pa.C.S. § 3503(a)-(c).

The court concluded:

Under the facts of this case, the elements of burglary and criminal trespass are not materially different, no new facts were

- 9 -

added by the Court, no change in defense strategy was precipitated by the amendment, and no prejudice was advanced at any time by the Juveniles other than the Court made the amendment *sua sponte* and 'too late'.

Trial Court Opinion, 4/11/14, at 20.

Our Supreme Court considered this question specifically in ***Carter***, ***supra***, where defendants were charged with burglary but after a bench trial, were convicted of criminal trespass, although they were never actually charged with that crime. ***Id.*** at 660. The Court reversed that conviction, holding, "*[s]cienter* is not an element of [burglary] and thus, one defending against a burglary charge would have no reason to establish that (albeit falsely) he believed his presence in a building or occupied structure was privileged or licensed. Yet evidence of such a belief could provide a basis for an acquittal of a charge of criminal trespass." ***Id.*** at 661.

The Commonwealth attempts to distinguish ***Carter***, arguing that, even if the two crimes are materially different, additional due process safeguards were provided in the instant matter. Specifically, the Commonwealth argues that the extensive oral argument at the hearing, and subsequent motion to reconsider, granted D.G. the opportunity to demonstrate prejudice.

We recognize that the Supreme Court's decision in ***Carter*** resulted from a concern for the due process rights of a defendant. In fact, ***Carter*** held that although there may have been evidence presented in a burglary case to support a trespass conviction, due process must be observed, and a defendant must be put on notice of the trespass charge.

- 10 -

In the matter *sub judice*, D.G. was never given notice that he might be adjudicated for trespass until after his case was presented. Despite this lack of notice, we do not perceive the same due process violations that influenced the Court's decision in **Carter**. Although the lower court may have erred in amending the information *sua sponte*, it remedied that error by granting D.G. the opportunity to demonstrate prejudice with his motion to reconsider and supporting brief. The court liberally construed D.G.'s oral objection as a motion to reconsider, and permitted him to brief the issue. Despite that opportunity, D.G. could not demonstrate any significant prejudice or precluded defense or evidence, other than the fact that he "could not have introduced any additional evidence, or cross-examined any of the Commonwealth's witness on the issue, nor could he have asked for a continuance at that time." Appellant's Brief, at 17. Further, per the factors laid out in **Mentzer**, **supra**, the charge of trespass did not entail the introduction of new facts or any further development of the facts presented. The facts relied upon by the lower court were the same presented with regard to the burglary charge. As such, D.G. was "fully apprised of the factual scenario which supports the charges against him." **Mentzer**, **supra.**

In **Carter**, our Supreme Court noted that the crimes of criminal trespass and burglary are materially different. Despite this difference, D.G. was not prejudiced by the lower court's amendment because he was fully apprised of the facts supporting that charge, **see Mentzer**, **supra**, and he

was given the added due process safeguard of the motion to reconsider. D.G. simply failed to demonstrate that the amendment prejudiced his defense. Furthermore, the statutorily-defined defenses for burglary and trespass are virtually the same. If D.G. had a good faith basis to assert one of these defenses, it is logical to assume he would have done so with regard to the burglary charge. His failure to assert a statutory defense to burglary, therefore, is indicative that he is likewise unable to assert the same defense as to trespass. He has not shown, therefore, that the amendment prejudiced his ability to assert a defense. D.G.'s assertion that the amendment was procedurally improper is correct; however, a mere procedural mistake on the part of the trial court is not, on its face, enough to support the overturning of the adjudication, especially where that court granted the defendant a chance to demonstrate prejudice and he failed to do so. Accordingly, D.G. is not entitled to relief on this claim.

Next, D.G. challenges the trial court's order that he pay restitution, arguing that there was no evidence to support the amount of restitution required. Appellant's Brief, at 18. D.G. asserts that "the [c]ourt accepted the uncorroborated, conclusory receipts as accurate." Appellant's Brief, at 19. In evaluating restitution orders, this Court has articulated the following standard of review:

> [O]ne of the purposes of the Juvenile Act is to hold children accountable for their behavior. Accordingly, the Juvenile Act authorizes the court to "order[ ] payment by the child of reasonable amounts of money as fines, costs or restitution as

deemed appropriate as part of the plan of rehabilitation concerning the nature of the acts committed and the earning capacity of the child." 42 Pa.C.S.A. § 6352, Disposition of delinquent child, (a) General rule.-(5). Consistent with the protection of the public interest and the community, the rehabilitative purpose of the Juvenile Act is attained through accountability and the development of personal qualities that will enable the juvenile offender to become a responsible and productive member of the community. Thus, the policies underlying the Juvenile Act and its restitution provision, as well as the plain language of Section 6352, serve to invest the juvenile court with a broad measure of discretion to apportion responsibility for damages based upon the nature of the delinquent act and the earning capacity of the juvenile.

*In re M.W.*, 725 A.2d 729, 732-33 (Pa. 1999). Further, "[i]n reviewing an order of restitution, discretion is abused where the order is speculative or excessive or lacks support in the record." *Commonwealth v. B.D.G.*, 959 A.2d 362, 367 (Pa. Super. 2008).

We do not find that the order of restitution constitutes an abuse of discretion. Al-Dafaai filled out a restitution claim form, provided his accounting, and testified at length as to the various damages he suffered, including the repair of: the doors and frame, the ADT alarm, the doorknobs, and the broken window. We do not agree, therefore, that the lower court's calculations were based upon speculative information. Additionally, the lower court specified that its order was made without prejudice, permitting D.G. the opportunity to raise this issue at a restitution hearing. D.G. failed to request such a hearing. Our precedent is clear that the lower court has broad discretion in awarding restitution. Presently, the amount of restitution ordered is supported by evidence and consistent with

the testimony of the victim as well as the purposes of the Juvenile Act.  As such, we do not find an abuse of discretion.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/21/2015