J-S39003-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| PARRISH LINNEN, | |
| Appellant | No. 614 WDA 2016 |

Appeal from the Judgment of Sentence Entered April 6, 2016
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0013602-2013

BEFORE:  BENDER, P.J.E., BOWES, J., and STRASSBURGER, J.[*]

MEMORANDUM BY BENDER, P.J.E.:                    **FILED JULY 06, 2017**

Appellant, Parrish Linnen, appeals from the judgment of sentence of an aggregate term of 25 to 50 years' incarceration, imposed after he was convicted of two counts of attempted homicide, 18 Pa.C.S. § 901(a), two counts of recklessly endangering another person 18 Pa.C.S. § 2705, and one count of conspiracy to commit homicide, 18 Pa.C.S. § 903(a).  After review, we vacate and remand for resentencing.

On appeal, Appellant raises three issues for this Court's review:

> I. The trial court erred when it denied [Appellant's] motion for a mistrial when Commonwealth witness Irvin Green blurted out in front of the jury that [Appellant] had previously been charged with criminal homicide thereby denying [Appellant] a fair trial;

---

[*] Retired Senior Judge assigned to the Superior Court.

II. The trial court erred when it denied [Appellant's] motion for judgment of acquittal relative to criminal attempt [homicide] where the Commonwealth failed to present sufficient evidence to prove [Appellant's] guilt beyond a reasonable doubt;

III. The trial court erred when it denied [Appellant's] motion for judgment of acquittal relative to criminal conspiracy where the Commonwealth failed to present sufficient evidence to prove [Appellant's] guilt beyond a reasonable doubt[.]

Appellant's Brief at 4 (unnecessary capitalization omitted).

We have carefully examined the certified record, the briefs of the parties, and the applicable law. Additionally, we have reviewed the thorough opinion of The Honorable Randal Todd of the Court of Common Pleas of Allegheny County. We conclude that Judge Todd's well-reasoned opinion accurately disposes of the issues presented by Appellant. *See* Trial Court Opinion (TCO), 1/9/17, at 5-8 (rejecting Appellant's claim that a mistrial was warranted based on a remark made by Irvin Green during defense counsel's cross-examination); *id.* at 2-5 (summarizing the evidence presented at Appellant's trial); *id.* at 8-9, 11-12 (rejecting Appellant's challenge to the sufficiency of the evidence to sustain his attempted homicide and conspiracy convictions).[1] Accordingly, we adopt Judge Todd's opinion as our own, and reject Appellant's three issues for the reasons set forth therein.

_____

Moreover, we point out that, in regard to Appellant's first issue, he does not develop any meaningful response to Judge Todd's conclusion that defense counsel elicited the at-issue statement upon which he now claims a mistrial was warranted. *See* Appellant's Brief at 10-11 (baldly stating that "[n]either the prosecution nor the defense intentionally elicited [the at-issue] statement[,]" with no further discussion of that contention). Appellant also cites no legal authority to support his assertion that the

*(Footnote Continued Next Page)*

Nevertheless, we are compelled to vacate Appellant's sentence and remand for resentencing. As Judge Todd points out in his opinion:

> [Appellant] was sentenced to two concurrent sentences of 15 to 30 years for the convictions for the criminal attempt homicide convictions and a consecutive sentence of 10 to 20 years for conspiracy to commit homicide. [Appellant] should not have been sentenced for both the inchoate crimes of criminal attempt homicide and the criminal conspiracy related to the attempted homicides. Sentences for more than one inchoate crime related to the same crime are prohibited by 18 Pa.C.S.[] §[]906[,] which provides:
>
> > A person may not be convicted of more than one offense defined by this chapter for conduct designed to commit or culminate in the commission of the same crime. 18 Pa.C.S. § 906[.]
>
> Therefore, the sentence imposed must be corrected.

TCO at 12.

---

*(Footnote Continued)* ───────────

court's cautionary instruction was insufficient to cure the prejudice he claims he suffered from that challenged remark. *Id.* at 11. Additionally, while Appellant's second and third issues are framed as challenges to the sufficiency of the evidence to sustain his attempted homicide and conspiracy convictions, his entire argument is focused on attacking the credibility of the two victims' testimony, averring that it "was fraught with inconsistencies and unreliability." *Id.* at 14; *see also id.* at 14-17. Attacks on credibility determinations are challenges to the weight, not the sufficiency, of the evidence. *See Commonwealth v. Gaskins*, 692 A.2d 224, 227 (Pa. Super. 1997). In any event, even had Appellant properly framed these issues as weight-of-the-evidence claims, we would conclude that Judge Todd's opinion accurately addresses those assertions as well. *See* TCO at 9-10, 11-12 (addressing Appellant's challenges to his attempted homicide and conspiracy convictions as both sufficiency-of-the-evidence claims and challenges to the weight of the evidence to support the jury's verdict).

We agree with Judge Todd that Appellant's sentence for conspiracy to commit homicide violates section 906.[2] "When a lower court improperly convicts and sentences a defendant for two inchoate crimes, this Court has the option to either remand for resentencing or amend the sentence directly." *See Commonwealth v. Cooke*, 492 A.2d 63, 71 (Pa. Super. 1985). Because in this case, the court imposed concurrent terms of incarceration for Appellant's two attempted homicide convictions, and a consecutive term for his conspiracy offense, we conclude that vacating the conspiracy sentence upsets the court's overall sentencing scheme and requires that we remand for resentencing. *See Commonwealth v. Thur*, 906 A.2d 552, 569-70 (Pa. Super. 2006) (stating that if our disposition upsets the overall sentencing scheme of the trial court, we must remand so that the court can restructure its sentence plan).

_____

[2] While Appellant does not challenge his sentence on appeal, our Supreme Court has indicated that a violation of section 906 implicates the legality of sentence. *See Commonwealth v. Jacobs*, 39 A.3d 977, 978 (Pa. 2012) (accepting "review to determine whether [a]ppellant's sentences for … two inchoate crimes *are illegal* under 18 Pa.C.S. § 906") (emphasis added). "Legality of sentence questions are not waivable and may be raised *sua sponte* by this Court." *Commonwealth v. Watley*, 81 A.3d 108, 118 (Pa. Super. 2013) (citations omitted). Additionally, we note that, "although [s]ection 906 speaks in terms of 'multiple convictions,' the Superior Court has interpreted this section to bar multiple sentences." *Jacobs*, 39 A.3d at 978 n.1 (citing *Commonwealth v. Grekis*, 601 A.2d 1284, 1295 (Pa. Super. 1992); *Commonwealth v. Maguire*, 452 A.2d 1047, 1049 (Pa. Super. 1982)).

Judgment of sentence vacated. Case remanded for resentencing. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/6/2017

Circulated 06/14/2017 02:29 PM

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

COMMONWEALTH OF
PENNSYLVANIA

v.

PARRISH LINNEN,

Defendant.

CRIMINAL DIVISION

NO:    CC201313602

APPEAL

**OPINION**

JUDGE RANDAL B. TODD


Criminal Division
Dept. of Court Records
Allegheny County, PA.

COPIES SENT TO:

Stephen A. Zappala, Jr.
District Attorney

By

Michael W. Streilly, Esquire
Assistant District Attorney
401 Courthouse
436 Grant Street
Pittsburgh, PA 15219

Counsel of Record for Defendant:

Patrick K. Nightingale, Esquire
428 Forbes Avenue, Suite 103
Pittsburgh, PA 15219

FILED
2017 JAN 9 PH 3:35

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | ) ) ) ) | CRIMINAL DIVISION |
| v. | ) ) | NO: CC201313602 |
| PARRISH LINNEN, | ) ) | |
| Defendant. | ) ) | |

TODD, J.

January 9, 2017

## OPINION

This is an appeal by Defendant, Parrish Linnen, from the judgment of sentence of April 6, 2016 after Defendant was found guilty on January 15, 2016 of two counts of Criminal Attempt Homicide in violation of 18 Pa.C.S.A. §901 (a), Conspiracy to Commit Homicide in violation of 18 Pa.C.S.A. §903(a)(1) and two counts of Reckless Endangering Another Person in violation of 18 Pa.C.S.A. §2705. Defendant's Post Trial Motions were denied by an order of April 11, 2016. Defendant filed his Notice of Appeal on April 29, 2016. On May 9, 2016 an order was entered directing Defendant to file his Concise Statement of Matters Complained of on Appeal within twenty-one (21) days. On May 24, 2016 Defendant filed his Concise Statement which set forth the following:

> "a. The trial court erred when it denied Defendant's Motion for a Mistrial when Commonwealth witness Irvin Green blurted out in front of the jury that Defendant had previously been charged with criminal homicide thereby denying Defendant a fair trial;
>
> b. The trial court erred when it denied Defendant's Motion for Judgment of Acquittal relative to Criminal Attempt where the Commonwealth failed to

present sufficient evidence to prove Defendant's Guilt Beyond a Reasonable Doubt;

c.  The trial court erred when it denied Defendant's Motion for Judgment of Acquittal relative to Criminal Conspiracy where the Commonwealth failed to present sufficient evidence to prove Defendant's Guilt Beyond a Reasonable Doubt;

d.  The trial court erred when it denied Defendant's Motion for a New Trial relative to Criminal Attempt where the Commonwealth failed to present sufficient evidence with the resulting verdict a shock of one's sense of justice;

e.  The trial court erred when it denied Defendant's Motion for a New Trial relative to Criminal Conspiracy where the Commonwealth failed to present sufficient evidence with the resulting verdict a shock of one's sense of justice;

f.  The trial court abused its discretion at sentencing when it ran Defendant's sentence for Criminal Conspiracy and Criminal Attempt consecutively with one another.


## BACKGROUND

This matter arises out of the shooting of Irvin Green and Tashawna Sutton on August 1, 2013 in Clairton, Pennsylvania. The evidence at trial established that Green and Sutton left their home on Wylie Avenue in the early morning hours of August 1 to walk to a nearby banking machine to withdraw money from Green's account. (T., p. 99) Green and Sutton walked up Wylie Avenue to its intersection with Miller Avenue and turned right on Miller Avenue toward the banking machine. As they were walking on Miller Avenue, Taevon Carr and Dakota Holcomb crossed the street in front of them. (T., p. 101) Both Green and Sutton knew Carr and Holcomb but did not speak with them. Green and Sutton continued onto the banking machine and after withdrawing the money, walked back up Miller Avenue to Wylie. As they turned onto Wylie Avenue, they again saw Carr and Holcomb standing on Wylie Avenue but they were now accompanied by Defendant and a fourth unidentified man. (T., pp. 105, 197) As soon as Green and Sutton turned onto Wylie Avenue, the four men turned and began walking down Wylie

2

Avenue towards Green and Sutton's home but shortly thereafter Green and Sutton lost sight of them. (T., pp. 105-106,197) Green and Sutton continued onto their house and as Sutton was unlocking the front door they began hearing gun shots and both Green and Sutton were immediately struck by the gun fire. (T., pp. 109 – 110) Green testified that he fell but then started to get up and as he did he turned and saw three men coming out of the darkness from across the street walking closer to his house as they continued shooting. (T., p. 109-110) Green testified that all three had guns in their hands and he watched as they continued firing at him and Sutton as they approached within a few feet of them. Green identified Defendant, Carr and Holcomb as the shooters. Green testified that he could clearly see their faces by the light from his front porch and he watched as they reloaded their guns. (T., p. 111) Green testified that he was shot six times and Sutton, who was also shot several times, fell to the ground just off their porch. (T., p. 113) As Sutton lay on the ground in front of the porch he could hear Defendant say to Holcomb: "Kill that bitch. Make sure she's dead". (T., p. 114) Green testified that he then ran towards Sutton's mother' home, which was about five houses away, and was pursued by Defendant and Carr. When he reached the house he turned and was shot by Carr in the shoulder and he fell to the ground. While lying on the ground, Carr stood over him and shot him in the face while Defendant was standing directly behind Carr, at which point Defendant said, "Come on" and Carr and Defendant then ran off. (T., pp. 114-115)

Green testified repeatedly that he immediately recognized Defendant and Carr and that he knew them from having lived in the Clairton area for much of his life and knowing their families. Specifically as to Defendant, Green testified that: "I grew up with his mom, with the (sic) Parrish Linnen's mom. I knew him when he was a kid." (T., p. 142).

3

Sutton also testified that as she began to open the door to their home she heard gun fire and was immediately hit. (T., p. 203) She fell to the ground and then tried to get up and as she did she was shot in the chest by Defendant. (T., p. 204) As she lay on the ground, Holcomb then stood over her pointing his gun and repeatedly pulled the trigger but it didn't fire. She then heard Defendant say "Fuck that bitch. She is dead anyway." (T., p. 206) She then saw Defendant and Carr chase Green as he ran down the street. As she lay on the ground she called 911. (T., p. 207)

Sutton also testified that she knew Defendant, who she referred to a "P. Money" and Carr from living in Clairton. She testified that Defendant had been to her house a couple times and she knew that he was a friend of her brother. (T., p. 238) Sutton testified that she knew Carr from the community and that she had seen him "thousands" of times. (T., p. 193)

The Commonwealth also presented the testimony of Sergeant Keith Zenkovich of the Clairton Police Department who testified that he arrived on the scene shortly after the shooting. After Green was placed into an ambulance Zenkovich asked Green who shot him and he stated he was shot by "P. Money" and Carr. (T., p. 260) Zenkovich then went to the ambulance that Sutton was in and she indentified the shooters as Carr and "the Linnen boy." (T., p. 261)

The Commonwealth also presented the testimony of Detective Steven Hitchings of the Allegheny County Police who also testified that he spoke to Green at the hospital later that morning and he again identified Defendant and Carr as the shooters. (T., p. 276) Hitchings also created aphoto arrays and returned to the hospital and presented the arrays to Green from which Green immediately identified Defendant and Carr as two of the shooters. (T., pp. 280, 283)

As noted above, Defendant was convicted of two counts of Criminal Attempt Homicide, Conspiracy, and two counts of Recklessly Endangering Another Person. On April 6, 2016

4

Defendant was sentenced to two concurrent sentences of 15 to 30 years for the criminal attempt homicide convictions and a consecutive sentence of 10 to 20 years for conspiracy. No further penalties were assessed on the remaining convictions.

**DISCUSSION:**

In his first issue on appeal, Defendant claims that it was error to dismiss his motion for a mistrial when Green stated in front of the jury during cross examination that Defendant had previously been charged with criminal homicide, thereby denying Defendant a fair trial. During cross examination defense counsel repeatedly attempted to discredit Green's identification of Defendant by eliciting testimony about Green's extensive criminal history, his drug usage and addiction and the fact that he was being treated for paranoid schizophrenia at the time of the shooting. (T., pp. 133 – 143) In addition, defense counsel attempted to discredit Green's testimony that he could identify Defendant because Green knew him from the years they lived in the same community. Defense counsel attempted to establish that there were extended periods of time when Green was incarcerated and, therefore, could not have seen or been around Defendant. In response to questions concerning when both he and Defendant were in the Clairton community the following exchange took place:

"Q. Now, you would agree with me there is a four-year period of time you're not in Clairton, correct?

A. Yeah.

Q. 2008-2012, correct?

A. Yes, sir. *Man, I know he was incarcerated for six years. I know I was incarcerated for six years and he ain't seen him and he ain't seen me,* but I know him.

Q. *Did you just testify that my client has been incarcerated for six years?*

A. Yeah. Yes, sir.

5

Q. *So let's narrow that down.* When possibly could you have seen Parrish Linnen in the projects?

A. Way before he even got arrested. *Way before he got arrested for the homicide that he beat.*" T., pp. 143-144) (Emphasis added)

At that point defense counsel made a motion for a mistrial stating:

"The basis is this individual, without my solicitation, I did not solicit the nature of my client's underlying charge, blurted out that he knew my client before he was arrested for the homicide that he beat." (T., p. 144)

In response the Commonwealth argued that the statement was elicited by questioning from defense counsel; that defense counsel could observe the outrage that the Green exhibited during his testimony concerning the attack on him and Sutton; and, that given repeated questioning about the opportunities to observe Defendant in the community, including specific question questioning about when Defendant was incarcerated, it was not unpredictable that Green might make statements about Defendant's criminal history. The motion for a mistrial was denied and the jury was immediately given the following cautionary instruction:

"Ladies and Gentleman of the Jury, there was a statement made by the witness on the stand concerning one of the Defendants and brought reference to a prior matter involving a homicide. I want you to disregard that. It's hearsay and not admissible and you should pay no attention to it." (T., pp. 147 – 148)

Clearly Green's reference to Defendant's previous arrest for a homicide was inadmissible. However, not all testimony or references to unrelated criminal conduct of a defendant is a basis for a mistrial In *Commonwealth v. McEachin*, 537 A.2d 883 (Pa. Super. 1988) the Court stated:

There is no *per se* rule that requires a new trial for a defendant every time there is reference to prior criminal activity. *Commonwealth v. Heaton,* 504 Pa. 297, 472 A.2d 1068 (1984). "[W]e have never ascribed to the view that all improper references to prior criminal activities necessarily require the award of a new trial as the only effective remedy." *Commonwealth v. Williams,* 470 Pa. 172, 178, 368

6

A.2d 249, 252 (1977).... An immediate curative instruction to the jury may alleviate any harm to the defendant that results from reference to prior criminal conduct. [citations omitted] ... "[W]hether the exposure of the jury to improper evidence can be cured by an instruction depends upon a consideration of all the circumstances." *Commonwealth v. Richardson,* [496 Pa. 521, 526, 437 A.2d 1162, 1165 (1981) ]. <u>Com. v. McEachin</u>, 371 Pa. Super. 188, 198–200, 537 A.2d 883, 888–89 (1988)

In determining whether a mistrial should be granted, consideration must also be given to the nature of the reference and whether the testimony was intentionally elicited by the prosecutor. *Commonwealth v. Satzberg,* 516 A.2d 758, 762 (1986)  In this case it is clear that the testimony at issue was not elicited in any manner by the Commonwealth. The testimony came during defense counsel's cross examination while questioning Green concerning his opportunities to interact with or see Defendant in the community. In addition, the specific statement at issue came only after counsel actually attempted to elicit specifics about Defendant's incarceration. After Green testified that Defendant had been incarcerated, counsel, rather than moving away from the subject of Defendant's prior incarceration, continued to question Green and asked:

> Q. *So let's narrow that down.* When possibly could you have seen Parrish Linnen in the projects?
>
> A. *Way before he even got arrested. Way before he got arrested for the homicide that he beat."* T., pp. 143-144)

It appears that Green's statement was in direct response to defense counsel's question to "narrow down" the period of Defendant's prior incarceration. Clearly defense counsel was not attempting to elicit Green's statement that Defendant had been arrested for a homicide. However, once the subject of Defendant's prior incarceration was raised, it was certainly possible that continued questioning of Green on the subject, who was emotional throughout his testimony, might make a

7

statement concerning the reason for Defendant's prior incarceration. It should also be noted that the statement did, in fact, indicate that Defendant was not convicted of the homicide that Green referred to. In addition, during the final charge the jury was specifically instructed that:

> "You heard testimony throughout the trial potentially concerning other possible criminal activities involving both Defendants. This testimony is not evidence against these Defendants, nor does it have any relevance in this case before you now. You must disregard this testimony in its entirety." (T., p. 442-443).

Based on all of the circumstances as set forth, there was no error in failing to grant the mistrial.

In his second issue on appeal Defendant argues that it was error to deny his Motion for Judgment of Acquittal relative to Criminal Attempt Homicide where the Commonwealth failed to present sufficient evidence to prove Defendant's guilt beyond a reasonable doubt. When reviewing a sufficiency of the evidence claim the evidence must be viewed in the light most favorable to the Commonwealth, as verdict winner, to determine if there is sufficient evidence to enable a fact-finder to find every element of the crime charged beyond a reasonable doubt. *Commonwealth v. McNair*, 603 A.2d 1014 (1992). It is exclusively within the province of the fact-finder to believe none, some or all of the evidence presented. *Commonwealth v. Henry*, 569 A.2d 929, 939 (1990); *Commonwealth v. Jackson*, 485 A.2d 1102 (1984). If the fact finder reasonably could have determined from the evidence presented that all of the necessary elements of the crime were established, then that evidence will be deemed sufficient to support the verdict. *Commonwealth v. Wood*, 637 A.2d 1335, 1343 (1994); *Commonwealth v. Hopkins*, 747 A.2d 910, 914 (Pa. Super. 2000)

Criminal attempt is defined in 18 Pa.C.S.A. §901 as follows:

> **(a) Definition of attempt.**--A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime. 18 Pa.C.S.A. § 901

8

The elements of the crime of attempt are an intent to commit a specific crime and any act constituting a substantial step toward the commission of that crime. *Commonwealth v. Fierst,* 257 Pa.Super. 440, 390 A.2d 1318 (1978). The intent to commit a crime may be inferred from the actions of the defendant in light of all attendant circumstances and even though direct evidence thereof is lacking. *Commonwealth v. Chance,* 458 A.2d 1371, 1374 (1983) *Commonwealth v. Cross,* 331 A.2d 813, 814 (1974) To prove a charge of attempted homicide, the Commonwealth must establish that the accused took a substantial step toward committing homicide, with the specific intent to kill. Such specific intent may reasonably be inferred from an accused's use of a deadly weapon on a vital part of the victim's body. *Commonwealth v. Hobson,* 604 A.2d 717 (1992). The offense of attempted homicide is completed by the discharging of a firearm at a person with intent to kill, even if no injury is suffered. *Commonwealth ex rel. Robinson v. Baldi,* 106 A.2d 689 (1954).

In the present case there is more than sufficient evidence to establish that Defendant was guilty of criminal attempt homicide. Both Green and Sutton specifically identified Defendant as walking towards them firing repeatedly the weapon he held in his hand as they were both struck multiple times. Sutton testified that as she tried to stand after being struck initially, she was looking right at Defendant as he fired again, striking her with a bullet in the chest. Clearly the specific intent to kill can be inferred from Defendant's repeated firing of a firearm in the direction of the victims. Therefore, there was no error in denying Defendant's motion for judgment of acquittal

In his related claim, Defendant argues that it was error to deny his Motion for a New Trial where the Commonwealth failed to present sufficient evidence with the resulting verdict a

9

shock of one's sense of justice. This argument is a claim that the verdict was against the weight of the evidence. A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. *Commonwealth v. Widmer,* 744 A.2d 745 (2000). A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. *Widmer,* 744 A.2d at 752. Rather, "the role of the trial judge is to determine that 'notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.." *Widmer,* 744 A.2d at 752. A new trial should only be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice. *Commonwealth v. Clay,* 64 A.3d 1049, 1054–55 (2013).

As noted above, the evidence was more than sufficient to support Defendant's conviction for criminal attempt homicide. The fact that issues were raised about Green's ability to identify his attackers based on the lighting conditions at the time of the attack, his history of drug abuse, addiction and mental illness and his familiarity with the Defendant does not undermine his positive identification of Defendant to the extent that the verdict was so contrary to the evidence that it must be set aside. In addition, the fact that there was some inconsistency between Sutton's preliminary hearing and trial testimony concerning who was standing over her when she fell after being shot and her identification or reference to others involved in the shooting does not compel a finding that the verdict was against the weight of the evidence. Consequently, Defendant's Motion for a New Trial on the basis that the verdict was against the weight of the evidence was appropriately denied.

10

Defendant next raises the claim that his conviction for conspiracy was based on insufficient evidence and was against the weight of the evidence. Criminal conspiracy is defined in 18 Pa.C.S.A. §903 as follows:

> **(a) Definition of conspiracy.**--A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he: (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or (2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime. 18 Pa.C.S.A. § 903

In _Commonwealth v. Hennigan_, 753 A.2d 245, 253 (Pa. Super. 2000) the Court noted the elements necessary to sustain a conviction for criminal conspiracy as follows:

> ". . .the Commonwealth must establish that the defendant (1) entered into an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared criminal intent and (3) an overt act was done in furtherance of the conspiracy." _Commonwealth v. Rios_, 546 Pa. 271, 283, 684 A.2d 1025, 1030 (1996), _cert. denied_, 520 U.S. 1231, 117 S.Ct. 1825, 137 L.Ed.2d 1032 (1997), citing 18 Pa.C.S.A. § 903. "This overt act need not be committed by the defendant; it need only be committed by a co-conspirator." _Commonwealth v. Johnson_, 719 A.2d 778, 784 (Pa.Super.1998) (_en banc_), _appeal denied_, 559 Pa. 689, 739 A.2d 1056 (1999). Proof of a conspiracy is almost always extracted from circumstantial evidence. _Commonwealth v. Swerdlow_, 431 Pa.Super. 453, 636 A.2d 1173, 1176 (1994). The Commonwealth may present a "web of evidence" linking the defendant to the conspiracy beyond a reasonable doubt. _Johnson_, 719 A.2d at 785. The evidence must, however, "rise above mere suspicion or possibility of guilty collusion." _Swerdlow_, 636 A.2d at 1177 (citation omitted). Mere association, presence at the scene, or knowledge of the crime is insufficient; the Commonwealth must prove that the defendant "became an active participant in the criminal enterprise and that he had knowledge of the conspiratorial agreement." _Id._ (citation omitted). _Commonwealth v. Hennigan_, 753 A.2d 245, 253 (Pa. Super. Ct. 2000)

The evidence set forth above supports a finding that Defendant conspired with Carr to kill Green and Sutton. The evidence establishes that they jointly attacked the victims, stood together and reloaded their weapons during the attack and chased Green when he attempted to flee.

Defendant stood beside Carr as Carr shot Green as he lay on the ground and they fled together. The evidence as a whole is sufficient to support the conviction for conspiracy and it is clearly not against the weight of the evidence.

Defendant next contends that it was an abuse of discretion to sentence him to consecutive sentences for criminal attempt and criminal conspiracy. As noted above, Defendant was sentenced to two concurrent sentences of 15 to 30 years for the convictions for the criminal attempt homicide convictions and a consecutive sentence of 10 to 20 years for conspiracy to commit homicide. Defendant should not have been sentenced for both the inchoate crimes of criminal attempt homicide and the criminal conspiracy related to the attempted homicides. Sentences for more than one inchoate crime related to the same crime are prohibited by 18 Pa.C.S.A. §906 which provides:

> A person may not be convicted of more than one of the inchoate crimes of criminal attempt, criminal solicitation or criminal conspiracy for conduct designed to commit or to culminate in the commission of the same crime. 18 Pa.C.S.A. § 906

Therefore, the sentence imposed must be corrected.


BY THE COURT:


_____

TODD, J.

12