J-S39042-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DONALD J. BOUTON | : | |
| | : | |
| Appellant | : | No. 206 MDA 2023 |

Appeal from the Judgment of Sentence Entered January 5, 2023
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s):  CP-36-CR-0000847-2021

BEFORE:  DUBOW, J., McLAUGHLIN, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:        **FILED: DECEMBER 5, 2023**

Donald J. Bouton (Appellant) appeals from the judgment of sentence entered on January 5, 2023, in the Lancaster County Court of Common Pleas, after a jury convicted him of two counts of strangulation (applying pressure to the throat or neck) and one count of aggravated assault (attempts to cause serious bodily injury (SBI) or causes injury with extreme indifference).[1]  The trial court imposed an aggregate sentence of eight to 16 years' incarceration. On appeal, Appellant claims the trial court erred, under Pa.R.Crim.P. 564[2], in

---

[1] 18 Pa.C.S. §§ 2718(a)(1) and 2702(a)(1), respectively.

[2] **See** Pa.R.Crim.P. 564 ("The court may allow an information to be amended, provided that the information as amended does not charge offenses arising from a different set of events and that the amended charges are not so materially different from the original charge that the defendant would be unfairly prejudiced. . . . ").

denying his motion to strike the amended information.  Based on the following, we affirm.

The trial court summarized the underlying facts taken from the trial testimony and relevant procedural history as follows:

> Just before midnight on March 2, 2021, Officers from the Elizabethtown Borough Police Department were dispatched in response to an alleged assault by Appellant against his girlfriend, [R.G. (the Victim)].  The dispatcher explained that [the Victim] was waiting in her car at the Elizabethtown Borough Police Department and the responding Officers made contact with her in the station parking lot.  [The Victim] had her son with her in the car and the responding Officers noticed that both [she] and her son were not wearing shoes or socks.  After [the Victim] and her son were invited into the station, [she] described to the Officers two episodes of physical violence — the first on February 28, 2021, and the second just before she arrived at the police station on March 2, 2021 — that Appellant had inflicted upon her.
>
> On March 3, 2021, a Criminal Complaint was filed against Appellant, charging him with one count of Strangulation, one count of Simple Assault, and one count of Harassment.[1]  On March 18, 2021, Appellant appeared for his preliminary hearing and the charges were waived to the Court of Common Pleas.  At the time of the waiver, the Commonwealth indicated that another count of Strangulation and counts of Aggravated Assault and Stalking would be added should Appellant elect to exercise his right to trial.[2]

_____

[1] In violation of 18 Pa.C.S.[ ] § 2718(a)(1), 18 Pa.C.S.[ ] § 2701(a)(1), and 18 Pa.C.S.[ ] § 2709(a)(1).  [The harassment charge was subsequently *nolle prossed*.]

[2] This information is lifted from Paragraph 3 of Appellant's pre-trial "Motion to Strike Amended information Pursuant to Criminal Rule of Procedure 564," filed on July 25, 2021.  After inquiring with the Lancaster County Court of Common Pleas Office of the Official Court Reporter, the [trial court] was informed that no transcript was made of the proceedings on March 18, 2021.

_____

On April 7, 2021, a Criminal Information was filed. On Count 1, Strangulation, the Information alleged that on or about March 2, 2021, [ ] Appellant placed [the Victim] in a headlock and held constant pressure on her neck. On Count 2, Simple Assault, the Information alleged that Appellant struck [the Victim] in the face with a closed fist and proceeded to continue with multiple strikes to her person. The Information also included a single count of Harassment.

On July 12, 2022, prior to the matter being listed for trial, the Commonwealth filed an Amended Criminal Information. The Amended Information added a second count of Strangulation, alleging that Appellant had placed his arm around [the Victim]'s neck and applied constant pressure, causing her to lose consciousness. The Amended Information also changed the Simple Assault charge to a charge of Aggravated Assault but did not alter the description of Appellant's alleged actions. Finally, the Amended Information added one count of Stalking[, 18 Pa.C.S. § 2709.1(a)(1)], alleging that Appellant assaulted [the Victim] multiple times between February 28, 2021, and March 2, 2021, without letting her leave.

On July 25, 2022, Appellant's trial counsel filed a Motion to Strike Amended Information Pursuant to Criminal Rule of Civil Procedure 564 [; the trial court] denied Appellant's Motion to Strike on August 8, 2022.

On October 17, 2022, a jury trial commenced. At trial, [the Victim] testified that as of March 2, 2021, she and Appellant had been dating for approximately nine months and that Appellant had been living with her in her home for the majority of their relationship. [The Victim] testified that on the day of the March 2nd assault, Appellant returned from work and appeared to be intoxicated. Later in the evening, Appellant took [the Victim]'s car to go to purchase cigarettes and gas. When he returned to [the Victim]'s home, he was "way more drunk than he was when he left and admitted that he went to the bar." Appellant and [the Victim] had a conversation that "wasn't pleasant," after which [the Victim] went to bed. Appellant later came to [the Victim]'s room and asked if he could sleep with her in her bed. Because she "didn't want to fight about it or anything," she agreed.

[The Victim] testified that after she had been asleep for approximately one hour, Appellant was "sleeping almost on top of [her]." When [the Victim] nudged him to move over, Appellant started punching her repeatedly with a closed fist in the back, the side of her head, and her chest. [The Victim] attempted to make her way out of the room. [The Victim] could not recall if she fell or if Appellant grabbed her, but she testified that she ended up on the floor and that Appellant started kicking her and then lifted her up from behind and put her in a stranglehold as she tried to get away. [The Victim] testified that when Appellant's arms were around her neck, she could not breathe well. Appellant then "dropped her," and she ran out of the room and into her son's room and locked the door.

[The Victim] testified that she eventually left her son's room, quietly grabbed her purse out of her bedroom, and went with her son to the Elizabethtown police station. When [the Victim] arrived at the police station, she called 911 because it was the middle of the night and she did not see anyone at the station. When responding Officers arrived at her vehicle, she went with them into the police station told them about the assault. [The Victim] testified that when she spoke with the Officers, she also told them about the incident that occurred on February 28, 2021.

[The Victim] explained that on February 28, 2021, Appellant had been drinking and was "in this mood where he likes to pester." [She] testified that she was downstairs in her home and that she heard Appellant "pestering" her son upstairs. [The Victim] went upstairs and told Appellant to leave her son alone and then went into the bathroom. Appellant proceeded to block [the Victim], preventing her from leaving. [The Victim] testified that Appellant then entered the bathroom and put her in a "stranglehold," causing her to lose consciousness. [She also] stated that she thought that she had a seizure because when she regained consciousness, her leg was shaking.

During the trial, the jury observed photographs taken at the police station that depicted the injuries that Appellant inflicted on [the Victim]. The photographs showed markings and bruising on her neck, arm, back, and ear. [The Victim] also testified about injuries depicted in photographs taken a day or two later, showing lingering markings on her neck, bruising to her chest and back, and increased bruising on her arms. Because of the pain from her injuries, [the Victim] sought medical treatment the day after the

incident. She was diagnosed with a transverse process fracture at L3 and L4 vertebral levels. [The Victim] testified that she had a "deep pain in [her] lower back" that radiated down her hip and leg and persisted for approximately one month.

On October 18, 2022, the second day of trial, the Commonwealth rested its case and Appellant's trial counsel moved for a judgment of acquittal on the charge of Stalking. Finding that the Commonwealth failed to introduce sufficient evidence of Stalking, [the trial court] granted Appellant's request.

Trial Ct. Op., 3/29/23, at 1-6 (record citations & some footnotes omitted; paragraph break added).

At the conclusion of the trial, the jury was provided with a verdict slip listing four counts — two counts of strangulation (for the February 28th and March 2nd incidents), one count of aggravated assault (attempted SBI) and one count of aggravated assault (causing SBI). The jury convicted Appellant of all counts.

On December 22, 2022, the court originally imposed the following sentence: (1) terms of three to six years' incarceration each for the two strangulation convictions and the aggravated assault (attempted SBI) offense, to be served concurrently; and (2) a term of five to ten years' imprisonment for the aggravated assault (causing SBI) conviction, to be served consecutively to the other offenses. *See* N.T., 12/22/22, at 11-12. Seven days later, Appellant filed a post-sentence motion, arguing, in part, that the two counts of aggravated assault should merge for sentencing purposes. On January 5, 2023, the court entered an order, modifying Appellant's sentence as follows: (1) two terms of three to six years' incarceration for the two

strangulation convictions, to be served concurrently; and (2) a consecutive term of five to ten years' imprisonment for one count of aggravated assault, to be served consecutively. Appellant's aggregate sentence thus remained the same. This appeal followed.[3, 4]

Appellant raises one issue on appeal:

1. Did the trial court err in denying the Motion to Strike Amended Information, in violation of Pennsylvania Rule of Criminal Procedure 564?

Appellant's Brief at 6.

In his sole issue on appeal, Appellant claims the trial court erred in denying his motion to strike the amended information. **See** Appellant's Brief at 11. As mentioned above, Appellant was originally charged, in relevant part,

---

[3] Appellant's counsel filed a notice of appeal purportedly from the "judgment of sentence imposed December 22, 2022, as finalized by the denial of [Appellant]'s Post Sentence Motion on the Fifth Day of January, 2023." Appellant's Notice of Appeal, 2/3/23. Counsel erroneously stated the appeal was from the December 22, 2022, sentencing order and that the post-sentence motion had been denied. It is well-settled that when the trial court amends the judgment of sentence while it maintains jurisdiction pursuant to 42 Pa.C.S. § 5505, the direct appeal lies from the amended judgment of sentence. **See Commonwealth v. Garzone**, 993 A.2d 1245, 1254 n.6 (Pa. Super. 2010). Accordingly, the caption has been amended to reflect that the appeal properly lies from the January 5, 2023, judgment of sentence. **See Commonwealth v. Shamberger**, 788 A.2d 408, 410 n.2 (Pa. Super. 2001) (*en banc*) (citation omitted) (correcting caption when appellant misstates from where appeal lies).

[4] On February 7, 2023, the trial court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) within 30 days. Appellant filed a timely concise statement on March 8th. The trial court issued a Pa.R.A.P. 1925(a) opinion on March 29th.

with one count of strangulation and one count of simple assault — both crimes concerned with the March 2, 2021, incident. On July 12, 2022, prior to the matter being listed for trial, the Commonwealth filed an amended criminal information, which, in pertinent part, added a second count of strangulation and changed the simple assault charge to a charge of aggravated assault. Appellant filed a motion to strike the amended information, which the trial court denied on August 8, 2022. Appellant's trial was subsequently conducted in October of 2022.

With respect to the new count of strangulation, Appellant highlights a comment made by the trial court that the amended information was "inarticulately drafted" and appeared to allege that the new strangulation count also stemmed from the March 2, 2021, incident. Appellant's Brief at 14 (citation omitted). He asserts "the new count of strangulation arose out of a completely separate incident which occurred February 28, 2021, and the court should have not permitted the Commonwealth to add this charge to the [original i]nformation, which related to a separate event on March 2, 2021." *Id.* at 14-15 (record citation omitted). Appellant acknowledges that the February 28th incident was mentioned in the affidavit of probable cause, but claims the addition of the new strangulation charge violated Rule 564, "which states that the offense cannot arise from a different set of events." *Id.* at 15.

As for the aggravated assault charge, Appellant contends that "although the charge arose from the same set of events as those in the April 7, 2021

information, the charge did not involve the same basic elements as the charge of simple assault[.]" Appellant's Brief at 15. He states, "There is no mention, in the complaint or the affidavit of probable cause, that [the Victim] had suffered [SBI], and no mention that [Appellant] had tried to cause [SBI]." *Id.* at 16. Appellant further suggests that there was no mention in the amended information of SBI and because there was no preliminary hearing, "the factual scenario was not developed during the preliminary hearing." *Id.* He maintains he "was not on notice that he would be defending against a claim that [the Victim] had been seriously injured, requiring him to defend against different elements than the elements of the simple assault charge[.]" *Id.*

In reviewing a challenge to an amended information, we are guided by the following:

> "[T]he purpose of Rule 564 is to ensure that a defendant is fully apprised of the charges, and to avoid prejudice by prohibiting the last minute addition of alleged criminal acts of which the defendant is uninformed." ***Commonwealth v. Sinclair***, 897 A.2d 1218, 1221 (Pa. Super. 2006). "[O]ur courts apply the rule with an eye toward its underlying purposes and with a commitment to do justice rather than be bound by a literal or narrow reading of the procedural rules." ***Commonwealth v. Grekis***, 411 Pa. Super. 513, 601 A.2d 1284, 1288 ([Pa. Super.] 1992).

> As stated in ***Sinclair***, when presented with a question concerning the propriety of an amendment, we consider:

> [w]hether the crimes specified in the original indictment or information involve the same basic elements and evolved out of the same factual situation as the crimes specified in the amended indictment or information. If so, then the defendant is deemed to have been placed on notice regarding his alleged criminal conduct. If, however, the

amended provision alleges a different set of events, or the elements or defenses to the amended crime are materially different from the elements or defenses to the crime originally charged, such that the defendant would be prejudiced by the change, then the amended is not permitted.

*Sinclair,* 897 A.2d at 1221 (quoting *Commonwealth v. Davalos,* 779 A.2d 1190, 1194 (Pa .Super. 2001), *appeal denied,* 567 Pa. 756, 790 A.2d 1013 ([Pa.] 2001) (citation omitted)). Additionally,

[i]n reviewing a grant to amend an information, the Court will look to whether the appellant was fully apprised of the factual scenario which supports the charges against him. Where the crimes specified in the original information involved the same basis elements and arose out of the same factual situation as the crime added by the amendment, the appellant is deemed to have been placed on notice regarding his alleged criminal conduct and no prejudice to defendant results.

*Id.,* at 1222[.] Further, the factors which the trial court must consider in determining whether an amendment is prejudicial are:

(1) whether the amendment changes the factual scenario supporting the charges; (2) whether the amendment adds new facts previously unknown to the defendant; (3) whether the entire factual scenario was developed during a preliminary hearing; (4) whether the description of the charges changed with the amendment; (5) whether a change in defense strategy was necessitated by the amendment; and (6) whether the timing of the Commonwealth's request for amendment allowed for ample notice and preparation.

*Id.* (citation omitted). Most importantly, we emphasize that "the mere possibility amendment of information may result in a more severe penalty . . . is not, of itself, prejudice." *Commonwealth v. Picchianti,* 410 Pa. Super. 563, 600 A.2d 597, 599 ([Pa. Super.] 1991), *appeal denied,* 530 Pa. 660, 609 A.2d 168 ([Pa.] 1992).

***Commonwealth v. Mentzer***, 18 A.3d 1200, 1202–03 (Pa. Super. 2011).[5]

***See also Commonwealth v. Sandoval***, 266 A.3d 1098, 1102 (Pa. Super. 2021).

In explaining its rationale for granting the Commonwealths' motion to amend the information, the trial court stated:

[A.] Strangulation

The Amended Information added an additional count of Strangulation that, in contrast to the original count of Strangulation, alleged that [the Victim] lost consciousness. During the trial, it became evident that the additional count of Strangulation [concerned] the separate incident that occurred on February 28, 2021. However, the face of the Amended Information was inarticulately drafted and appeared to allege that the additional count of Strangulation also occurred on or about March 2, 2021.

Therefore, applying the first, second, and fourth ***Mentzer*** factors, at the time that [the trial court] ruled on Appellant's pretrial Motion to Strike, there was no indication that the additional count meaningfully changed the factual scenario supporting the charge or added facts previously unknown to Appellant. Although the new count alleged that [the Victim] lost consciousness, the additional allegation appeared inconsequential because injury to the victim is not an element of Strangulation. ***See*** 18 Pa.C.S.[ ] § 2718(a), (b). Therefore, these factors weighed in favor of finding that Appellant was not prejudiced by the amendment.

The third factor is inapplicable as Appellant waived his preliminary hearing. Regarding the fifth factor, although Appellant baldly claimed that his defense strategy had to change due to the amendment, he provided no meaningful support for

_____

[5] Rule 564 was amended effective December 21, 2017 "to more accurately reflect the interpretation of th[e] rule that has developed since it was first adopted in 1974." Pa.R.Crim.P. 564, *cmt*. (citing, *inter alia*, ***Sinclair***, ***supra***). In other words, the amendment was not intended to modify current practice, including the application of the six ***Mentzer*** factors.

this claim. Finally, the Amended Information was filed on July 12, 2022, and trial did not commence until October 17, 2022, allowing for ample notice and preparation.

Most importantly, [the trial court's] decision to allow the Commonwealth to proceed on the Amended Information did not violate [the] underlying purpose of Rule 564: to fully appraise Appellant of the factual scenario which supports the charges against him. Appellant admitted in his Motion to Strike that when he appeared for his preliminary hearing and the charges were waived to the Court of Common Pleas, the Commonwealth indicated that another count of Strangulation would be added should Appellant elect to exercise his right to trial. Therefore, Appellant was unquestionably aware of all of the charges that the Commonwealth intended to, and ultimately did, file against him.

[B.] Aggravated Assault

The Amended Information also changed the original count of Simple Assault to a single count of Aggravated Assault. Here, the first and second **Mentzer** factors weighed toward a finding that Appellant was not prejudiced by the amendment. The factual scenario supporting the charges did not change as both the original and Amended Information contained an identical recitation: that Appellant struck the [V]ictim in the face with a closed fist and proceeded to continue with multiple strikes to her person.

The third factor is again inapplicable as Appellant waived his preliminary hearing.

Regarding the fourth factor, the description of the charge did change with the amendment as Aggravated Assault requires a showing that Appellant caused or attempted to cause serious bodily injury rather than bodily injury.

As set forth above, the fifth and sixth factors also supported [the trial court's] decision to deny Appellant's Motion to Strike. Although Appellant alleged that his defense strategy must change due to the amendment, he provided no support for his claim. Finally, the Amended Information was filed on July 12, 2022, and trial did not commence until October 17, 2022, allowing for ample notice and preparation.

Although the fourth factor marginally weighed in favor of striking the Amended Information, each of the remaining factors supported [the trial court's] decision to allow the Commonwealth to proceed on the Amended Information. Here again, Appellant clearly had notice of the factual scenario that supported the charges against him. Whether he had to defend against claims of bodily injury or serious bodily injury, he was undoubtedly aware that he had repeatedly struck [the Victim] and caused some level of injury — and that the Commonwealth intended to prosecute him to the most serious extent possible if he chose to proceed to trial.

Trial Ct. Op. 9-12 (emphasis omitted).

We agree with the trial court's well-reasoned opinion that the pre-trial amendment of the information was proper in light of the totality of the circumstances. In reviewing the record and the court's statements, it is clear the court considered the mandates of Rule 564, relevant case law, and the relevant *Mentzer* factors when it granted the Commonwealth's motion to amend the criminal information. Moreover, contrary to Appellant's allegations, the record supports the notion that he was fully apprised of the charges he was facing and was not prejudiced, where: (1) Appellant waived his right to a preliminary hearing which negated the introduction of these amended charges and the development of the factual scenario with which Appellant now takes issue; (2) the Commonwealth filed the motion to amend the information several months prior to trial; (3) Appellant admitted that the affidavit of probable cause included the February 28th assault and acknowledged that in his motion to strike, the Commonwealth had informed him that another count of strangulation would be added if he elected to

- 12 -

exercise his right to trial; and (4) Appellant was undeniably aware that he had repeatedly struck the Victim and caused some level of injury that resulted in hospitalization and therefore, he cannot feign ignorance when the Commonwealth changed the degree of the assault from simple to aggravated prior to trial. Accordingly, we conclude the trial court did not err in denying Appellant's motion to strike the amended information.

Judgment of sentence affirmed.

Judgment Entered.

_____
Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/5/2023